## LOAN AND DISBURSEMENT AGREEMENT

THIS LOAN AND DISBURSEMENT AGREEMENT (this "Agreement") is made as of this *15* day of *March*, 2011, by and between **SANDY SPRING BANK** (the "Lender"), **ITPROP, LLC**, a Maryland Limited Liability Company (the "Borrower"), and **THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD.**, a Maryland Corporation (the "Corporate Guarantor"), and **ROBERT L. WILT** and **CATHY R. WILT**, husband and wife and jointly and severally (collectively, the "Individual Guarantors"); witnesseth:

The Borrower has applied to the Lender for two (2) loans in the aggregate principal amount of **SIX HUNDRED FORTY-ONE THOUSAND SEVEN HUNDRED DOLLARS ($641,700.00)** for purposes of purchasing of real property, constructing or renovating certain Improvements (hereinafter defined) upon certain real property located in Howard County, Maryland, and the associated, qualifying transaction costs, and the Lender is willing to accommodate the Borrower upon and subject to the terms, conditions, and provisions of this Agreement.

NOW, THEREFORE, in consideration of the premises, the parties hereto agree as follows:

SECTION 1. Definitions

All accounting terms not specifically defined herein shall have the meanings assigned to them as determined by generally acceptable accounting principles, consistently applied. Unless the context otherwise requires, when used herein, the following terms shall have the following meanings:

1.1 "Authorization" means the Authorization for Debenture Guarantee No. 45628550-10 dated March 1, 2011 issued by the SBA.

1.2 "Budget" means the projected budget for the purchase approved by the Lender.

1.3 "Closing" means _*3/15/11*_, or such other date as is mutually agreed upon by the parties hereto.

1.4 "Corporate Guarantor" means The Innovative Technologies Group & Co., Ltd.

1.5 "Corporate Guaranty" means the written guaranty of payment of even date herewith to the Lender by the Corporate Guarantor.

1.6 "Events of Default" means those events set forth in Section 7 hereof.

1.7 First Assignment of Leases and Rents" means the Assignment of Leases and Rents as collateral for the Term Loan of even date herewith from the Borrower in favor of the Lender.

1.8 "First Deed of Trust" means the First Deed of Trust, Security Agreement and Assignment of Leases and Rents of even date herewith from the Borrower to

DEBTOR'S EXHIBIT 1

Steven E. Anderson and Terry Rawlings, trustees for the benefit of the Lender, securing the Term Loan and covering the Real Property and the personal property located thereon.

1.9   "Guarantor" means collectively the Corporate Guarantor and the Individual Guarantors.

1.10   "Guaranty" means collectively the Corporate Guaranty and the Individual Guarantees.

1.11   "Improvements" means all structures, improvements, and facilities and the related fixtures existing or to be constructed or installed upon the Land and the personalty.

1.12   "Individual Guarantor" means jointly, severally and collectively **Robert L. Wilt and Cathy R. Wilt**, husband and wife.

1.13   "Individual Guaranty" means the written guaranties of payment of even date herewith to the Lender by the Individual Guarantor.

1.14   Intentionally Omitted.

1.15   "Time Note" means the loan in the maximum principal amount of **Two Hundred Eighty-Five Thousand Two Hundred Dollars ($285,200.00)** to be made by the Lender to the Borrower pursuant to the terms and conditions of this Agreement.

1.16   "Time Note" means that Interim Loan Promissory Note described in Section 2.2 hereof and any and all amendments thereto and modifications thereof.

1.17   "Land" means that parcel of fee simple real property located at and generally known as 8017 Dorsey Run Road, Suite H, Unit 1-2 and 1-3, Jessup, Maryland.

1.18   "Lease" shall mean that lease by and between Borrower, as tenant ("Operating Entity") and Corporate Guarantor as landlord, dated _____ as of the Date of Closing for the term as provided in the SBA Authorization at a base rental approved by Lender, to commence on the first day which payments of principal and interest are due under the Term Note, which Lease shall be for 100% of the Real Property and shall be approved by Lender.

1.19   "Liabilities" means the obligation of the Borrower to pay (a) the unpaid principal amount of the Term Note and the Interim Note, plus all accrued and unpaid interest thereon, and (b) all other charges, interest, and expenses chargeable by the Lender to the Borrower under this Agreement and the other Loan Documents.

1.20   "Lien" means any mortgage, deed of trust, pledge, security interest, assignment, encumbrance, lien, or charge of any kind, including, without limitation, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

2

DEBTOR'S EXHIBIT 1

1.21 "Loan" means collectively the Term Loan and the Interim Loan to be made by the Lender to the Borrower pursuant to the terms and conditions of this Agreement.

1.22 "Loan Commitment" means that letter dated February 11, 2011, if and as amended, from Lender and accepted by Borrower and Guarantor committing to make the Loan under the terms and conditions contained therein.

1.23 "Loan Documents" means collectively the Term Note, the Interim Note, this Agreement, the Corporate Guaranty, the Individual Guarantees, the First Deed of Trust, the Second Deed of Trust, the First Assignment of Leases and Rents, the Second Assignment of Leases and Rents, the Loan Commitment, the Term Loan Financing Statement, the Interim Loan Financing Statement, and any other instrument, document, and agreement now and hereafter evidencing, securing, guarantying, indemnifying, and given by the Borrower or any third party in connection with the Loan or any of the other Liabilities (including those documents set forth in Section 3 hereof) and any and all amendments thereto and modifications thereof.

1.24 "Business Finance Group" means Business Finance Group, Inc., a Maryland corporation, which has been certified as a "certified development company" by the SBA pursuant to the Small Business Investment Act.

1.25 "Notes" means collectively the Term Note and the Interim Note.

1.26 "Operating Entity" means the Guarantor.

1.27 "Person" includes a corporation, an association, a partnership, an organization, a business, an individual, or a government or political subdivision thereof or governmental agency.

1.28 Intentionally Omitted.

1.29 Intentionally Omitted.

1.30 Intentionally Omitted.

1.31 "Real Property" means collectively, the Land and the Improvements.

1.32 "SBA" means the United States Small Business Administration.

1.33 "SBA Loan" is the loan described in the SBA Authorization.

1.34 "Second Assignment of Leases and Rents" means the Assignment of Leases and Rents as collateral for the Interim Loan of even date herewith from the Borrower in favor of the Lender.

1.35 "Second Deed of Trust" means the Second Deed of Trust and Security Agreement of even date herewith from Borrower to Steven E. Anderson and Terry Rawlings,

3

# DEBTOR'S EXHIBIT 1

trustees for the benefit of Lender, securing the Interim Loan and covering the Real Property and the personal property located thereon.

1.36    "Taxes" means all taxes and assessments whether general or special, ordinary or extraordinary, or foreseen or unforeseen, of every character, including, but not limited to, amusement taxes (including all penalties or interest thereon), which at any time may be assessed, levied, confirmed, or imposed on the Borrower or Guarantor or any of their properties or assets or any part thereof or in respect of any of their franchises, businesses, income, or profits, and all claims for sums which by law have or might have become a lien or charge upon any of its properties or assets.

1.37    "Term Loan" means the loan in the maximum principal amount of **Three Hundred Fifty-Six Thousand Five Hundred Dollars ($356,500.00)** to be made by the Lender to the Borrower pursuant to the terms and conditions of this Agreement.

1.38    "Term Loan Financing Statement" means the financing statements to secure the Term Loan to be filed at Maryland SDAT to perfect the Lender's security interest.

1.39    "Term Note" means that Term Loan Promissory Note described in Section 2.1 hereof and any and all amendments thereto and modifications thereof.

SECTION 2.  Loans to the Borrower

2.1.    Term Loan.  The Term Loan shall be evidenced by and repaid in accordance with the terms of the Term Note to the Lender, in form and content satisfactory to the Lender, of even date herewith, duly executed by the Borrower.

2.2.    Interim Loan.  The Interim Loan shall be evidenced by and repaid in accordance with the terms of the Interim Note to the Lender, in form and content satisfactory to the Lender, of even date herewith, duly executed by the Borrower.

SECTION 3.  General Conditions of Lending

3.1.    General Conditions Precedent to the Loan.  The obligation of the Lender to make the Loan is subject to the following express conditions precedent:

A.  Loan Documents.  The Borrower shall have delivered to the Lender the following:

1.  Term Note.  The executed Term Note;
2.  Interim Note.  The executed Interim Note;
3.  Individual Guarantees.  The executed Individual Guarantees;
4.  Corporate Guaranty.  The executed Corporate Guaranty;
5.  First Deed of Trust.  The executed First Deed of Trust;
6.  Second Deed of Trust.  The executed Second Deed of Trust;

4

# DEBTOR'S EXHIBIT 1

7. <u>First Assignment of Leases and Rents</u>. The executed First Assignment of Leases and Rents;

8. <u>Second Assignment of Leases and Rents</u>. The executed Second Assignment of Leases and Rents;

9. <u>Term Loan Financing Statement</u>. The executed Term Loan Financing Statement;

10. <u>Interim Loan Financing Statement</u>. The executed Interim Loan Financing Statement;

11. <u>Lease</u>. The executed Lease.

12. <u>Borrower's Incumbency Certificate</u>. A certificate as to the incumbency and signatures of the members of the Borrower signing the Loan Documents;

13. <u>Borrower's Certification and Consent of Members</u>. A certified copy of the certification and consent of the Borrower authorizing the execution, delivery, and performance of this Agreement, the Notes, and the other Loan Documents;

14. <u>Borrower's Organizational Documents</u>. A copy of the certified articles of organization and operating agreement of the Borrower;

15. <u>Corporate Guarantor's Incumbency Certificates</u>. Certificates as to the incumbency and signatures of the officers of Corporate Guarantor;

16. <u>Corporate Guarantor's Certifications and Authorizations</u>. Certified copies of resolutions necessary to authorize the execution, delivery and performance of the Loan Documents applicable to Corporate Guarantor;

17. <u>Corporate Guarantor's Organization Documents</u>. Copies of the organizational documents of Corporate Guarantor.

18. <u>Good Standing Certificates</u>. Certificates, as of the most recent date practicable, of the Maryland State Department of Assessments and Taxation as to the good standing of the Borrower and Corporate Guarantor;

19. Intentionally Omitted;

20. Intentionally Omitted;

21. Intentionally Omitted;

22. <u>Commitment Fee</u>. Borrower shall have paid to Lender a non-refundable commitment fee of ONE THOUSAND SEVEN HUNDRED EIGTHY TWO DOLLARS AND FIFTY CENTS ($1,782.50);

23. <u>SBA Participation Fee</u>. Borrower shall pay to Lender at Closing the SBA Participation Fee;

24. <u>SBA Commitment</u>. The executed SBA Commitment to pay the Interim Loan in full;

25. <u>Payoffs</u>. Borrower shall have provided pay off amounts for all existing debt to be paid off by the Term Loan and obtain releases of all liens on the Real Property.

26. <u>Miscellaneous</u>. Such other documents, instruments, opinions, and agreements as the Lender and its counsel may require in their discretion, and/or as set forth in the Loan Commitment.

B.    <u>Lender's Counsel</u>. All legal matters incident to this Agreement shall be satisfactory to counsel for the Lender, and the Borrower shall have reimbursed the Lender for the fees and expenses of Lender's counsel in connection with the preparation of this Agreement and all matters incident thereto.

5

# DEBTOR'S EXHIBIT 1

C.    Terms of the Loan Commitment. Borrower shall be in compliance with all terms and conditions of the Loan Commitment, which Loan Commitment shall survive the Closing of the Loan.

D.    Authorization. The Authorization shall be in full force and effect, shall not be in default, and shall be enforceable by its terms.

E.    Other General Conditions Precedent to All Advances. The following shall be additional conditions precedent to any advance hereunder:

1.    The Borrower shall be in compliance with all of the terms and provisions of this Agreement or any Loan Document and no Event of Default shall have occurred under this Agreement or any Loan Document.

2.    All costs overruns, if any, shall have been paid by Borrower.

3.    Lender shall have received from Borrower, in form and content reasonably satisfactory to the Lender and its counsel: (a) a Lender's title insurance policy pertaining to the Real Property, if requested by the Lender, insuring the Lender in the amount of the Loan in form and substance satisfactory to the Lender.

SECTION 4.   Disbursement of the Loan.

4.1.    Not Assignable. The Loan is not Assignable by the Borrower. For the purposes of this Agreement, the Loan, or any portion thereof, shall remain the property of the Lender, pursuant to the terms of this Agreement; provided, however, that nothing herein contained shall be considered as in any way modifying, affecting, or subordinating the obligations heretofore given or to be given by the Borrower as security for the Loan, and the same shall be and remain in full force, tenor, and effect, this Agreement being intended as protection for the disbursement of the Loan and to assure its use for the purposes intended by the Lender.

4.2.    Uses of Loan Proceeds. Lender shall disburse $ _356,500 ⁰⁰_ of the Term Loan to pay the acquisition cost of the Real Property and off existing debt of the Borrower and $ _285,200 ⁰⁰_ of the Term Loan for equity reimbursement and settlement costs.

4.3.    Intentionally Omitted.

4.4.    Change Orders. For the Borrower to receive payment for any work performed pursuant to a Change Order, the Lender must have first approved the Change Order in writing before the work is initiated. Failure to do so shall preclude the work from being cost certifiable for inclusion in the Loan; however, the Lender's approval of a Change Order will not necessarily result in an increase in the Loan.

4.5.    Intentionally Omitted.

4.6.    Liability of the Lender. The Lender shall in no event by responsible or liable to any entity other than the Borrower for the disbursement of, or failure to disburse, the Loan or any part thereof.

6

# DEBTOR'S EXHIBIT 1

4.7.    Other Liens and Encumbrances. The Borrower hereby covenants with the Lender to keep the Real Property free of all liens, except the lien of the First Deed of Trust, the Second Deed of Trust, and taxes not in arrears, unless such liens are approved by the Lender. The Borrower hereby covenants with the Lender to keep the Real Property free from all other encumbrances except those specifically approved in writing by the Lender. The Lender hereby agrees that it will not withhold its consent to reasonable encumbrances necessary for the construction and use of the Project, such as utility and construction easements.

4.8.    Intentionally Omitted.

4.9.    Intentionally Omitted.

4.10    Intentionally Omitted.

SECTION 5. Representations and Warranties

To induce the Lender to make the Loan hereunder, the Borrower and the Guarantor hereby make the following representations and warranties to the Lender:

5.1.    Binding Agreement. This Agreement constitutes, and the Notes and the other Loan Documents constitute or will constitute when issued and delivered for value received, the valid and legally binding obligations of the Borrower and the Guarantor enforceable in accordance with their respective terms.

5.2.    Litigation. There are no proceedings pending, or, so far as any person signing below as or on behalf of the Borrower or Guarantor know, threatened before any court or administrative agency which will materially adversely affect the financial condition or operations of the Borrower or the Guarantor.

5.3.    No Conflicting Agreements. There are no provisions of any existing mortgage, deed of trust, indenture, contract, lease, or agreement binding on the Borrower or the Guarantor or affecting their property which would conflict with or in any way prevent the execution, delivery, or carrying out of the terms of this Agreement, the Notes, or the other Loan Documents.

5.4.    Financial Condition. The Borrower's and Guarantor's financial statements, copies of which have been furnished to the Lender, were prepared in accordance with generally accepted accounting principles consistently applied and are complete and correct and fairly and accurately present the financial condition of the Borrower and the Guarantor, as the case may be, as of their date and the results of their operations for the period then ended. There has been no material adverse change in the financial condition of the Borrower or the Guarantor since the date of such financial statements.

5.5.    Information. All information contained in any financial statement, application, schedule, report, certificate, opinion, or any other document given by the Borrower, the Guarantor, or by any other person in connection with the Loan or with any of the Loan Documents is in all respects true and accurate, and the Borrower, the Guarantor, or such other person has not omitted to state any material fact or any fact necessary to make such information not misleading.

7

# DEBTOR'S EXHIBIT 1

5.6.   Assets and Properties.   The Borrower and the Guarantor each has good and merchantable title to all of their respective assets and properties, and there are no Liens outstanding against any of these assets and properties.

5.7.   Taxes.   All Taxes imposed upon the Borrower or the Guarantor and their respective properties, operations, and income have been paid and discharged prior to the date when any interest or penalty would accrue for the nonpayment thereof except for those Taxes being contested in good faith and by appropriate proceedings by the Borrower or the Guarantor.

5.8.   Violation of Laws, etc.   Neither consummation of the Loan nor the use, directly or indirectly, of all or any portion of the proceeds of the Loan hereunder will violate or result in a violation of any provision of any applicable statute, regulation, or order of, or any restriction imposed by, the State of Maryland or the United States of America or by any authorized official, board, department, instrumentality, or agency thereof.

5.9.   Commercial Purpose.   The Loan is being used strictly for commercial purposes as set forth in the Commercial Law Article of the Annotated Code of Maryland, as amended from time to time.

5.10.   SBA Loan.   The Borrower has received the authorization for the SBA Loan.

5.11.   Existence of Defaults.   Neither the Borrower nor the Guarantor is in default upon any of their existing indebtedness or under any agreement or obligation under which the Borrower or the Guarantor may be bound, nor will the Borrower's or the Guarantor's entering into this Agreement or any other Loan Document immediately or with the passage of time, the giving notice, or both, cause the Borrower or the Guarantor to violate or be in default under any other agreements or obligations.

5.12.   Status of Borrower.   The Borrower is a Limited Liability Company duly organized, validly existing, and in good standing under the laws of the State of Maryland and its operations and affairs have been effectively and validly commenced.   The Borrower has the power to own its properties, conduct its businesses and affairs, and enter into the Loan Documents and perform the obligations thereunder.   The Borrower's entry into the Loan Documents with the Lender has been validly and effectively approved by its members as may be required by its Operating Agreement, and any applicable laws.   All copies of the members certification and consent as the case may be, of the Borrower delivered to the Lender in connection with the Loan Documents are true, accurate, and complete and no action has been taken in diminution or abrogation thereof.

5.13.   Status of Corporate Guarantor.   The Corporate Guarantor is duly organized, validly existing, and in good standing under the laws of the State of Maryland, and has the power to own its properties, conduct its business and affairs, and enter into the applicable Loan Documents and perform the obligations thereunder.

5.14.   Compliance With Laws.   The use of the Real Property for its intended purposes will not violate any zoning or other ordinance of law, or any agreement of the Borrower applicable to the Real Property or its use, that the Plans and Specifications have been or will be approved by appropriate governmental authorities having jurisdiction, and that necessary building and other permits have been or will be obtained.

8

# DEBTOR'S EXHIBIT 1

5.15.   Limited Use of Loan Proceeds.  All Loan proceeds pursuant to this Agreement shall be applied only for the payment of existing debt approved by Lender, and such other purposes as shall be specifically permitted herein.

SECTION 6. Covenants

Until payment in full of all of the Liabilities:

6.1.   Use of Loan Proceeds.  The Borrower will use the proceeds of the Loan for acquisition of the Real Property, and such other purposes as specified herein.

6.2.   Financial Statements.  The Borrower and Corporate Guarantor each will furnish to the Lender as soon as available but in no event more than one hundred fifty (150) days after the end of each fiscal year, financial statements of the Borrower and Corporate Guarantor prepared in accordance with generally accepted accounting principles, including balance sheet, statement of income, statement of shareholder equity and statement of changes in financial position, certified by an independent certified public accountants satisfactory to the Lender. Such financial statements shall be accompanied by the accountant's statement that no Event of Default exists hereunder or, if an Event of Default exists, specifying the Event of Default.

6.3.   Financial Information of Individual Guarantors.   Each of the Individual Guarantors will provide on an annual basis updated financial statements and tax returns within fifteen (15) calendar days of filing.

6.4.   Other Information.  The Borrower will furnish to the Lender, promptly from time to time, such information concerning the operations, business, affairs, and financial condition of the Borrower as the Lender may reasonably request.  The Guarantor shall provide such information as reasonably requested by Lender concerning the financial condition of the Guarantor.

6.5.   Litigation.  The Borrower, and/or the Guarantor, as the case may be, will promptly notify the Lender of any litigation instituted or threatened against either or any of them and of the entry of any judgment or Lien against any of them and/or their respective assets or properties.

6.6.   Preservation of Properties.  The Borrower and the Guarantor will at all times (a) maintain their properties, whether owned or leased, in good operating condition, and from time to time will make all proper repairs, renewals, replacements, additions, and improvements thereto needed to maintain such properties in good operating condition, (b) comply with the provisions of all material leases to which it or they are a party or under which it or they occupies property so as to prevent any loss of forfeiture thereof or thereunder, and (c) comply with all laws, rules, regulations, and orders applicable to the properties or any part thereof; provided, however, that nothing contained in this section shall require the making of any repair, renewal, replacement, addition, or improvement of or to a particular property or the continued maintenance of any property which would not be required in the exercise of sound business judgment.

6.7.   Insurance.  The Borrower will at all times maintain insurance with responsible insurance companies on such of its assets and properties, in such amounts, and against such risks

9

# DEBTOR'S EXHIBIT 1

as is required in the Loan Documents and furnish to the Lender certificates evidencing such insurance. The Borrower further will (a) at all times maintain with well-rated and responsible insurance companies such insurance as is required by applicable laws and such other insurance in such amounts, of such types, and against such risks, hazards, liabilities, casualties, and contingencies as is customarily maintained by companies similarly situated, and (b) file with the Lender a detailed list of the insurance then in effect and stating the names of the insurance companies, the types, the amounts, and rates of the insurance, dates of the expiration thereof and the properties and risks covered thereby, and, within thirty (30) days after the notice in writing from the Lender, obtain such additional insurance as the Lender may reasonably request. Borrower shall maintain fire, builder's risk, and extended coverage, public liability, and if applicable, flood insurance, in amounts and with companies satisfactory to Lender throughout the term of the Loan on the Real Property and the Collateral and shall provide Lender with copies of such policies, all of which shall identify Lender as Mortgagee loss payee. Borrower shall provide Lender with evidence of the payment of the premiums coming due during the Loan period within twenty (20) days from the due date of said premium. Borrower shall at all times during the Loan maintain workers' compensation insurance in accordance with applicable State law, and upon request, shall supply Lender with copies of such policies and receipts evidencing payment of premiums due thereon.

6.8.    Taxes. Except to the extent that the validity or amount thereof is being contested in good faith and by appropriate proceedings, the Borrower and the Guarantor will pay and discharge all Taxes prior to the date when any interest or penalty would accrue for the nonpayment thereof. Borrower shall supply Lender with evidence of the payment of any taxes, charges and assessments coming due during the Loan period within thirty (30) days from the due date for such taxes, charges and assessments.

6.9.    Compliance with Laws. The Borrower and the Guarantor will at all times comply with all applicable federal, state, and local laws, rules, and regulations, and orders of any court or other governmental authority having jurisdiction.

6.10.    Expense Payments. If the Borrower and the Guarantor shall fail to make any payment or otherwise fail to perform, observe, or comply with any of the conditions, covenants, terms, stipulations, or agreements contained herein, the Lender with five (5) days written notice to the party as required to pay or perform and without waiving or releasing any obligation or any Event of Default may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of the Borrower and/or the Guarantor, and may enter upon any premises of any such party for that purpose and take all such action thereon as the Lender may consider necessary or appropriate for such purpose. All sums so paid or advanced by the Lender (the "Expense Payments"), together with interest thereon from the date paid, advanced, or incurred until repaid in full at a per annum rate of interest charged on the principal of any of the Liabilities, plus two percent (2%) per annum, shall be paid by the Borrower to the Lender upon demand by the Lender.

6.11    Notice of Existence of Default. The Borrower shall promptly advise the Lender of the existence of condition or event, or the expected existence of any condition or event, which is or which will be with the passage of time, the giving of notice, or both, an Event of Default under this Agreement or a violation or Event of Default under any of the Loan Documents or any of the loan documents with respect to the SBA Loan.

10

DEBTOR'S EXHIBIT 1

6.12. <u>SBA Loan</u>. The Borrower shall fully perform, fulfill, comply with, and discharge in a timely manner, all duties, obligations, covenants and conditions on the part of Borrower to be kept, observed or performed under the terms and conditions of the Authorization. The Borrower agrees to close the SBA Loan, in strict accordance with all of the terms and conditions of the Authorization, to the end that the Lender shall receive funds from the SBA Loan to pay in full the Interim Note. The Borrower hereby appoints the Lender as its agent and attorney-in-fact, with full powers of substitution, in the name of the Borrower to do and perform all things and to execute and deliver all documents necessary to close the SBA Loan in the manner contemplated by the Authorization. Such power of attorney shall be deemed to be complied with an interest and shall be irrevocable.

6.13. <u>Authorization</u>. The Authorization must be in form and content reasonably satisfactory to the Lender, and the Borrower shall not cancel, terminate, amend or alter the Authorization without the prior written approval of the Lender, nor do or permit to be done anything which would violate or breach the terms of the Authorization or cause the same to be canceled, terminated or to require amendment.

6.14. <u>Merger, Acquisition or Sale of Assets</u>. The Borrower, without the consent of the Lender, shall not enter into any merger or consolidation or acquire all or substantially all of the assets of any entity, or sell, lease or otherwise dispose of any of its assets except in normal course of business.

6.15.   Intentionally Omitted.

6.16.   Intentionally Omitted.

6.17. <u>Access to Real Property</u>. The Borrower will permit the Lender and its representatives to enter upon and inspect the Real Property during business hours after twenty-four (24) hours notice.

6.18. <u>Indemnification</u>. The Borrower hereby indemnifies and holds the Lender harmless from and against any and all expenses, costs, claims or loss, including reasonable accounting and legal fees, incurred or suffered by the Lender arising under the Loan Documents or including any action brought by the Borrower against the Lender.

6.19.   Intentionally Omitted.

6.20. <u>No Junior Lien/On Sale/No Debt</u>. Except for the subordinate lien to secure the SBA Loan, no junior lien, encumbrance or security interest in all or any part of the Real Property or the personalty and business assets of the Borrower and/or the Corporate Guarantor subject to the Lender's security interest shall be permitted without the written consent of the Lender. The Loan shall be due and payable in the event of any transfer or other conveyance or disposition of all or any part of the Real Property or the personalty subject to the Lender's security interest, and any change in ownership of the Borrower or Corporate Guarantor. In addition Borrower and/or Corporate Guarantor shall incur no additional direct or indirect debt, whether accrued or unaccrued, whether by debt instrument or lease, without the prior approval and consent of the Lender.

11

# DEBTOR'S EXHIBIT 1

6.21.   Banking Relationship.  As long as the Loan is outstanding the Borrower shall maintain its primary depository accounts with the Lender.

6.22.   Lease.  Borrower shall enter into a lease of 100% the Real Property with the Corporate Guarantor for a term as required by the SBA Authorization to commence on the first day of the Permanent Loan Period which lease shall be approved by Lender prior to settlement.

SECTION 7.  Events of Default

The occurrence of any one or more of the following events (the "Events of Default") shall constitute an Event of Default hereunder:

7.1.   Failure to Pay Interest.  If the Borrower shall fail to pay any interest on any of the Liabilities, including, without limitation, the Notes and the Loan within five (5) days of when due and payable; or

7.2.   Failure to Pay Principal, etc.  If the Borrower shall fail to pay the principal of any of the Liabilities, including, without limitation, the Notes and the Loan, or any of the other Liabilities within five (5) days of when due and payable; or

7.3.   Terms, Conditions, and Covenants of This Agreement.  If the Borrower shall fail to duly perform, comply with, or observe any of the other terms, conditions, or covenants contained in this Agreement, and such failure shall remain uncured for a period of thirty (30) days after the date of written notice from the Lender to the Borrower; or

7.4.   Representations and Warranties.  If any representation and warranty or any statement or representation made in any report, opinion, schedule, officer's certificate, or other certificate or any other information given by the Borrower or the Guarantor or furnished in connection with the Loan shall prove to be false or incorrect in any material respect on the date as of which made and the same shall remain uncured for a period of thirty (30) days after the date of written notice from the Lender to the Borrower; or

7.5.   Default under Loan Documents.  If an Event of Default (as described or defined therein) shall occur or exist under the provisions of any of the other Loan Documents; or

7.6.   Default under Other Obligations.  If any obligation of the Borrower (other than the Liabilities) for the payment of borrowed money becomes or is declared to be due and payable prior to the expressed maturity thereof and the time of payment is not extended by the lender; or

7.7.   Judgment against Borrower.  If any judgment against the Borrower or any attachment or other levy against the property of the Borrower remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for a period of thirty (30) days; or

7.8.   Bankruptcy, Insolvency, etc.  If the Borrower becomes insolvent or generally does not pay its debts as they become due, or if a petition for relief in a bankruptcy court is filed by the Borrower, or if the Borrower applies for, consents to, or acquiesces in the appointment of a trustee, custodian, or receiver for the Borrower or any of its assets and property, or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent, or acquiescence, a trustee, custodian, or receiver is appointed for the Borrower or for a substantial

12

# DEBTOR'S EXHIBIT 1

part of the assets and property of the Borrower and is not discharged within sixty (60) days; or any bankruptcy, reorganization, debt arrangement, or other proceeding or case under any bankruptcy or insolvency law or any dissolution or liquidation proceeding is instituted against the Borrower and is consented to or acquiesced in by the Borrower or remains for sixty (60) days undismissed; or the Borrower takes any action to authorize any of the actions described in this subsection; or

7.9.    Adverse Change.  If the Lender determines in good faith that a material adverse change has occurred in the financial condition of the Borrower from the financial condition set forth in the most recent financial statement furnished to the Lender, or from the financial condition of the Borrower most recently disclosed to the Lender in any manner; or

7.10.  Prospect of Payment.  If the Lender determines in good faith that the prospect of payment of any of the Liabilities is impaired; or

7.11.  Guarantor.  The happening of any event described in Sections 7.6, 7.7, 7.8 or 7.9 above as to the Guarantor or a breach by the Guarantor of any of the Guarantor's covenants or agreements contained in the Guaranty; or

7.12.  Failure to Pay Debts to Third Persons.  A default under any obligation or indebtedness due any third party, regardless of when created or whether secured or unsecured; or

7.13.  Failure to Give Notice of Default.  A failure by the Borrower to promptly advise the Lender of the existence of any condition or event, which is known or which reasonably should be known to the Borrower, which is or which will be with the passage of time, the giving of notice, or both, a default under this Agreement or any Loan Document; or

7.14.  Financial Statements.  The failure of the Borrower or the Guarantor to furnish or cause to be furnished, when and as due, the financial statements and reports required to be furnished to the Lender under this Agreement, the Guaranty and any other Loan Document; or

7.15.  Failure to Fund SBA Loan.  The failure for any reason to close the SBA Loan on or before October 3, 2007 or the termination for any reason of the Authorization; or

7.16.  Cross Default.  A default under any obligation or indebtedness owed by Borrower or any Guarantor under any Loan Document, or otherwise to any lender, regardless of whether secured or unsecured.

SECTION 8.  Rights and Remedies

8.1    If any one or more Events of Default shall occur, then in each and every such case, the Lender at its option may at any time thereafter exercise and/or enforce any or all of the following rights and remedies:

8.1.1    Commitment.  Terminate its Loan Commitment.

8.1.2.  Acceleration.  Declare without notice to the Borrower all of the Liabilities to be immediately due and payable, whereupon the same shall become due and payable, together with

13

# DEBTOR'S EXHIBIT 1

accrued and unpaid interest thereon, without presentment, demand, protest, or notice, all of which the Borrower hereby waives.

8.1.3. <u>Exercise of Rights and Remedies</u>. Exercise any rights and remedies available to the Lender under this Agreement, the Notes, the other Loan Documents, and under applicable laws.

8.1.4. <u>Refuse to Advance Loan Proceeds</u>. Refuse to advance any or all Loan proceeds.

8.1.5. <u>Foreclosure</u>. Foreclose the lien and security interest of the First and Second Deeds of Trust with respect to the Real Property or any personal property securing the Loan;

8.1.6. <u>Confess Judgment</u>. Confess judgment against the Borrower on the Notes or against any Guarantor on the Guaranty of such Guarantor;

8.1.7. <u>Initiate Legal Action</u>. File suit against the Borrower on the Notes, this Agreement, or any other Loan Document or against any Guarantor on the Guaranty of such Guarantor;

8.1.8. <u>Exercise Rights as a Secured Creditor Under the UCC</u>. Exercise any rights of a secured creditor under the <u>Uniform Commercial Code</u>, as amended including the right to take possession of any personal property securing the Loan without the use of judicial process (the Borrower and Corporate Guarantor hereby expressly waiving all rights to notice and a judicial hearing prior to such repossession) and the right to require the Borrower to assemble said personal property at the Real Property or such other place as the Lender may specify;

8.1.9. <u>Right of Set Off</u>. Set off any amounts in any account or certificate with the Lender in the name of the Borrower or in which the Borrower has an interest;

8.1.10. <u>Preservation of SBA Authorization</u>. Take all steps and expend all funds deemed necessary by the Lender to preserve the Authorization and to attempt to cause the SBA Loan to be funded in the manner contemplated by this Agreement and the Authorization.

8.2. <u>Liquidation Costs</u>. The Borrower shall reimburse and pay to the Lender upon demand all costs and expenses (the "Liquidation Costs"), including, without limitation, reasonable attorneys' fees and expenses, advanced, incurred by, or on behalf of the Lender in collecting and enforcing the Liabilities and/or the Loan Documents. All Liquidation Costs shall bear interest payable by the Borrower to the Lender upon demand from the date advanced or incurred until paid in full at a per annum rate of interest equal at all times to the then highest rate of interest charged on the principal of any of the Liabilities, plus two percent (2%) per annum.

8.3. <u>Remedies, etc., Cumulative</u>. Each right, power, and remedy of the Lender as provided for in this Agreement or in the other Loan Documents or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Agreement or in the other Loan Documents or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by the Lender of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by the Lender of any or all such other rights, powers, or remedies.

DEBTOR'S EXHIBIT 1

8.4.   No Waiver, etc.   No failure or delay by the Lender to insist upon the strict performance of any term, condition, covenant, or agreement of this Agreement or of any of the other Loan Documents, or to exercise any right, power, or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude the Lender from exercising any such right, power, or remedy at any later time or times.  By accepting payment after the due date of any amount payable under this Agreement or under the Notes or under any of the other Loan Documents, the Lender shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under this Agreement, the Notes, or any of the other Loan Documents, or to declare an Event of Default for failure to effect such prompt payment of any such other amount.

SECTION 9. Miscellaneous

9.1.   Survival.   All covenants, agreements, representations, and warranties made herein and in any other instruments or documents delivered pursuant hereto shall survive the execution and delivery of the Notes and shall continue in full force and effect so long as any of the Liabilities are outstanding and unpaid.

9.2.   Notices.   All notices, demands, requests, consents, or approvals required under this Agreement to be in writing shall be deemed to have been properly given if and when mailed by first class certified mail, return receipt requested, postage prepaid, if to Lender at **SANDY SPRING BANK, 9112 GUILFORD ROAD, COLUMBIA, MARYLAND 21046, ATTENTION: C. ALAN JEFFERSON, VICE PRESIDENT,** and if to Borrower or Guarantor at _____, **ATTENTION: ROBERT L. WILT and CATHY R. WILT, MEMBERS,** or such other address as the Borrower or the Lender shall have furnished to the other in writing.

9.3.   Change, etc.   Neither this Agreement nor any term, condition, representation, warranty, covenant, or agreement hereof may be changed, waived, discharged, or terminated orally but only by an instrument in writing by the party against whom such change, waiver, discharge, or termination is sought.

9.4.   Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland.

9.5.   Terms Binding.   All of the terms, conditions, stipulations, warranties, representations, and covenants of this Agreement shall apply to and be binding upon, and shall inure to the benefit of, the Borrower and the Lender and each of their respective heirs, personal representatives, successors, and assigns.

9.6. Gender, etc.   Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

9.7.   Headings.   The section and subsection headings in this Agreement are for convenience only and shall not limit or otherwise affect any of the terms hereof.

15

DEBTOR'S EXHIBIT 1

9.8. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument.

9.9. Consent to Jurisdiction; Service of Process. Borrower hereby agrees and consents that any action or proceeding arising out of or brought to enforce the provisions of this Agreement and/or any of the other Loan Documents may be brought in any appropriate court in the State of Maryland or in any other court having jurisdiction over the subject matter, all at the sole and absolute election of the Lender, and by the execution of this Agreement the Borrower irrevocably consents to the jurisdiction of each such court. The Borrower hereby irrevocably appoints its counsel, as its agent to accept service of process for it and on its behalf in any proceeding brought pursuant to the provisions of this subsection.

9.10. Further Assurances and Corrective Instruments. The parties hereto agree that they will, from time to time, execute and deliver, or cause to be executed and delivered, such supplements hereto and such further instruments as may reasonably be required for carrying out the intention of the parties to, or facilitating the performance of, this Agreement.

9.11. Estoppel Certificate. The Borrower will, upon not less than ten (10) business days request by the Lender or any other party to this transaction, execute, acknowledge, and deliver to such person a statement in writing, certifying (a) that this Agreement is unmodified and in full force and effect and the payments required by this Agreement to be paid by the Borrower have been paid, and (b) the then unpaid principal balance of the Notes; and stating whether or not to the knowledge of the signer of such certificate any party to any of the Loan Documents is in default in the performance of any covenant, agreement, or condition contained therein and, if so, specifying each such default of which the signer may have knowledge, it being intended that any such statement delivered pursuant to this section may be relied upon by the Lender and the other parties to this transaction.

9.12. Prior Agreements Canceled. Except for (a) the other Loan Documents, or (b) any other document or agreement to the extent specifically provided therein, (i) this Agreement shall completely and fully supersede all other prior agreements, both written and oral, by and among the Borrower, the Lender, and the other parties to this transaction (and any prior agreements by and between any two or more of the foregoing), and (ii) none of the parties to this Agreement shall hereafter have any rights thereunder, but shall look solely to this Agreement and the other Loan Documents for definitions and determination of all of their respective rights, obligations, and responsibilities relating to the Liabilities.

9.13. Illegality. If fulfillment of any provision hereof or any transaction related hereto or to the other Loan Documents, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or provision only shall be void, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect; provided, however, that if any such provision pertains to the repayment of the Liabilities, the occurrence of any such invalidity shall constitute an Event of Default hereunder.

16

# DEBTOR'S EXHIBIT 1

9.14. <u>Assignment</u>. This Agreement and the other Loan Documents may not be assigned, in whole or in part, by the Borrower or Guarantor without the prior written consent of the Lender.

IN WITNESS WHEREOF, the Lender, the Borrower and the Guarantor have each caused this Agreement to be executed under seal as of the day and year first above written.

WITNESS/ATTEST:

BORROWER:
ITPROP, LLC, a Maryland Limited Liability Company

By: _____
    Name:    Robert L. Wilt
    Title:    Member

By: _____
    Name:    Cathy R. Wilt
    Title:    Member

INDIVIDUAL GUARANTORS:

_____
Robert L. Wilt

_____
Cathy R. Wilt

CORPORATE GUARANTOR:
The Innovative Technologies Group & Co, Ltd., a Maryland Corporation

By: _____
    Name:    Robert L. Wilt
    Title:    President

LENDER:
SANDY SPRING BANK

By: _____
    Name:    C. Alan Jefferson
    Title:    Vice President

BTC\10996

17

# DEBTOR'S EXHIBIT 1

## Exhibit A

**BEING KNOWN AND DESIGNATED** as Unit No. 1-2 and **Unit 1-3** in the horizontal property regime known as **"DORSEY RUN COMMERCE PARK CONDOMINIUM"** as established pursuant to the Declaration and By Laws dated February 9, 2005 and recorded among the Land Records of Howard County respectively in Liber No. 9003, folios 74 and 96 made by Dorsey Run Associates, LLC as amended from time to time pursuant to the terms thereof and especially as amended pursuant to (i) First Amendment to Declaration dated June 8, 2005 and recorded as aforesaid in Liber No. 9327, folio 674, (ii) Second Amendment to Declaration, undated, recorded as aforesaid in Liber No. 10865, folio 70, and (iii) Third Amendment to Declaration dated April 4, 2008 and recorded as aforesaid in Liber No. 11159, folio 81; and pursuant to and as shown on condominium plat entitled, "DORSEY RUN COMMERCE PARK CONDOMINIUM" which said Plat is recorded as aforesaid as **Condominium Plat Nos. 17269 and 17270**, as amended from time to time and especially as amended by (i) 1st Supplemental Plat recorded as aforesaid as Condominium Plat Nos. 17596 and 17597, (ii) 2nd Supplemental Plat recorded as aforesaid as Condominium Plat Nos. 19352 and 19353, and (iii) 3rd Supplemental Plat recorded as aforesaid as Condominium Plat Nos. 19831 and 19832. All of said Condominium Regime being Unit No. 1B of the original regime described in Declaration dated March 20, 1986 and recorded as aforesaid in Liber No. 1450, folio 440, as amended from time to time, and as shown on Plat No. 8024, as amended.

The improvements thereon being known as No. 8017 Dorsey Run Road, Units 1-2 and 1-3.

TOGETHER WITH an undivided fee simple interest in the common elements of said Condominium in accordance with the percentage established in said Declaration for the above described Condominium Units; and with the benefit of, and subject to, all rights, privileges, duties, restrictions, covenants, easements, conditions, and annual and special assessments and charges contained in or referred to in said Declaration, By-Laws, and any amendments thereto.

BEING the same property which by Deed dated July 26, 2005 and recorded among the Land Records of Howard County in Liber No. 9388, folio 431 was granted and conveyed by Dorsey Run Associates, LLC unto Donald N. Norton and Patricia Norton.

# DEBTOR'S EXHIBIT 1