# BUSINESS LOAN SECURITY AGREEMENT

## THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD ("Debtor")

a corporation of the State of Maryland in consideration of credit accommodations now or hereafter established for Debtor by SANDY SPRING BANK ("Secured Party"), whose office is located at 9112 Guilford Road, Suite 2, Columbia, Maryland 21046 agrees as follows:

I. **DEFINITIONS:** As used herein:

    A. **"Collateral"** means all of the property described in subparagraphs 1 through 5 unless one or more boxes are checked. If a box is checked, "Collateral" means only the property described in the subparagraph(s) whose box or boxes are checked. In all cases, "Collateral" includes all options, rights, conversion, subscription and other privileges now and hereafter arising with respect to collateral and all proceeds and products of Collateral, cash and non-cash in any form whatsoever.

[X] 1. **Equipment.** All of Debtor's equipment and supplies (including all present and future additions, attachments, accessions, substitutions and replacements, used in or related to the Business) as defined below, including, but not limited to that which is described below and in any separate schedule at any time delivered by Debtor to Secured Party.

[X] 2. **Inventory.** All of Debtor's inventory, of every type or description, now owned and hereafter acquired and wherever located, including raw materials, work in process and finished goods, all materials usable or used or consumed in Debtor's business; all present and future substitutions thereof and additions thereto.

[X] 3. **Accounts.** All of Debtor's present and future accounts receivable, contract rights, general intangibles, things in action, chattel paper, instruments, mortgages and returned, repurchased and repossessed goods, all money due or to become due Debtor, tax refunds and the books and records relating to the foregoing.

[ ] 4. **Farm Products.** All crops, livestock and supplies held, used or produced in farming operations; all products of crops and livestock in every state or condition.

[ ] 5. **Other.** See "Exhibit A" attached hereto and made a part hereof.

    B. **"Obligations"** means all indebtedness and other liabilities, direct or indirect, fixed or contingent, joint, several or independent, now or hereafter owed by Debtor to Secured Party, whether due or unmatured, or held or to be held by the Secured Party for its own account or for another or others, whether created directly or acquired by assignment or otherwise and howsoever evidenced. Debtor understands and agrees that the broad and all-inclusive definition of the word "Obligations" shall be liberally construed so that Secured Party may thereby open new and additional credit facilities for Debtor, whether or not the same may presently be contemplated.

    C. **"Obligors"** means the Debtor, together with all cosigners, endorsers, guarantors or sureties of or upon any Obligation. (each of whom is individually an "Obligor")

    D. Unless the context otherwise requires, all terms used herein which are defined in the Maryland Uniform Commercial Code shall have the meanings therein stated

II. **GRANT OF SECURITY INTEREST.** As security for the due and punctual payment of any and all of the present and future Obligations (as defined in Section IB) of Debtor. Debtor hereby grants to Secured Party a continuing security interest in (a) all the Collateral (as defined in Section A), whether now or hereafter existing or acquired and (b) all present and future products and proceeds of the Collateral.

III **REPRESENTATIONS AND WARRANTIES.** Debtor represents and warrants that:

    A. No litigation or other proceeding before any court or administrative agency is pending or to the knowledge of the officers of Debtor, is threatened against Debtor, the outcome of which could materially impair Debtor's financial condition or its ability to carry on the Business.

    B. Its principal business operation (the Business) is _____ and that, if a corporation, it is duly organized and existing in good standing under the laws of the jurisdiction stated above, the execution, delivery and performance of this Agreement and other documents and instruments required under this Agreement and the issuance of any notes by Debtor are within its corporate powers, have been duly authorized, and are not in contravention of law, the terms of Debtor's Articles of Incorporation, partnership agreement or other governing document(s) or By-Laws, or the terms of any indenture, agreement or undertaking to which Debtor

**DEBTOR'S EXHIBIT 4**

is a party or by which it is bound.

    C. No Financing Statement (other than any filed in favor of the Secured Party) relating to any of the Collateral is on file in any place; and

    D. The chief and other places of business (if any), the books and records relating to the Collateral and the Collateral are located at the address(es) set forth below and Debtor will not change such locations without prior written notice to and consent of Secured party.

IV. **COLLATERAL GENERALLY.** Debtor assumes all liability and responsibility in connection with Collateral acquired by it; and Debtor's obligation to pay all Obligations shall not be affected or diminished by reason of the fact that any Collateral may be lost, destroyed, stolen, damaged or for any reason unavailable to Debtor.

V. **COVENANTS.** Debtor agrees that:

    A. If Secured Party so demands in writing (i) all proceeds of the Collateral shall be delivered to Secured Party promptly upon their receipt in a form satisfactory to Secured Party and (ii) all chattel paper, instruments and documents pertaining to the Collateral shall be delivered to Secured Party at the time and place and in the manner in which specified in Secured Party's demand.

    B. In order to enable Secured Party to comply with the law of any jurisdiction applicable to any security interest granted hereby or to the Collateral, Debtor will execute and deliver upon request, in form acceptable to Secured Party, any Financing Statement, notice, statement, instrument, document, agreement or other paper and/or perform any act requested by Secured Party which may be necessary to create, perfect, preserve, validate or otherwise protect such security interest or to enable Secured Party to exercise and enforce its rights hereunder or with respect to such security interest; and Debtor further agrees that a carbon, photocopy, or other reproduction of this Security Agreement or of any Financing Statement signed by Debtor in connection with this transaction is sufficient, and may be filed, as a Financing Statement in order to perfect Secured Party's security interest in the Collateral.

    C. It will promptly pay any filing fees or other costs in connection with (i) the filing or recordation of Financing Statements or any other papers described above and (ii) such searches of the public records as Secured Party in its sole discretion shall require.

    D. Secured Party is authorized to file or record any Financing Statements or other papers without Debtor's signature if permitted by applicable law.

    E. Except for the security interest granted hereunder. Debtor shall keep the Collateral free and clear of all security interests, liens or encumbrances of any kind.

    F. It shall promptly pay when due all taxes and transportation, storage and warehousing charges and fees affecting or arising out of or relating to the Collateral and shall defend the Collateral against all claims and demands of any persons claiming the same or any interest therein adverse to Debtor's or Secured Party's interest.

    G. It will keep the Collateral insured in such amounts and against such risks as Secured Party in its sole discretion may require. Immediately upon demand by Secured Party Secured Party shall be named a loss payee on policies of insurance covering the Collateral and a proper endorsement shall be delivered to Secured Party which shall provide that such policy(ies) may not be cancelled, nor Secured Party removed as a loss payee without at least thirty (30) days prior written notice by the insurer(s) to Secured Party.

    H. Secured Party may, at all time require that Debtor comply with Secured party's then existing procedures relative to full servicing accounts receivable financing, including, but not limited to, such, or all, of the following as Secured Party may elect: (i) notify account debtors on any Collateral to make remittances directly to Secured Party, (ii) require Debtor to submit a daily activity report on such form as Secured Party may prescribe furnishing such information as Secured Party may request or (iii) require Debtor to establish a cash collateral account on such terms and conditions as Secured Party may prescribe.

    I. Secured Party's sole duty with respect to Collateral shall be to use reasonable care in the custody and preservation of Collateral in its possession.

    J. Secured Party shall not be obligated to take any steps necessary to preserve any rights in any of the Collateral against prior parties, and Debtor hereby agrees to take such steps.

    K. Debtor shall reimburse Secured Party for all costs and expenses, including filing and reasonable attorney's fees, incurred in connection with the custody, care, preservation or collection of the Collateral.

# DEBTOR'S EXHIBIT 4

L. Secured Party may, but is not obligated to, exercise any rights of conversion or exchange or other rights, privileges and options relating to the Collateral and shall have no obligation to sell or otherwise realize upon any of the Collateral and shall not be responsible for any failure to do so for any delay in so doing.

M. In the event of any litigation with respect to this Agreement, the Obligations, the Collateral, or any other instrument, document or agreement applicable thereto. Debtor hereby (i) waives the right to a trial by jury and all defenses, rights of set off and rights to interpose counterclaims of any nature and (ii) hereby consents to the jurisdiction and venue of the courts of the State of Maryland.

N. It will provide Secured Party with such information as Secured Party may from time to time request with respect to the location of any of its places of business and notify Secured Party promptly in writing of any change in any of its office(s) or other place(s) of business;

O. It will permit any officer(s) or agent(s) of Secured Party, during normal business hours, to have access to and examine all property, minute books, and other corporate records, books of account and financial records of Debtor and to copy such minute books, and other corporate records, books of account and financial records, and

P. It will promptly notify Secured Party upon the occurrence of any default under Section VI of which Debtor has or reasonably should have knowledge.

VI. **EVENTS OF DEFAULT.** Upon the occurrence of any of the following events or conditions: (A) non-payment when due of any of the Obligations; (B) failure of Debtor to perform any agreement on its part to be performed hereunder, or under the terms of any other agreement covering the Obligations; (C) Secured Party deeming itself insecure; (D) the insolvency of any Obligor or an assignment for the benefit of creditors by any Obligor or the institution, by or against any Obligor, of any proceedings under any chapter or provision of any statute, rule or regulation dealing with bankruptcy, relief of debtors, insolvency, or the like; (E) any representation in any financial or other statement of any Obligor (delivered to Secured Party by or on behalf of such Obligor) proving inaccurate or misstating any material fact; (F) the occurrence of a material adverse change in any Obligor's financial condition; (G) entry of any judgment against, or issuance of any attachment upon or garnishment against and Obligor or any of its property; (H) dissolution, merger, consolidation, liquidation or reorganization of any Obligor which is a corporation, partnership or other legal or commercial entity or (I) the death of any Obligor who is a natural person, then, at the option of Secured Party (i) all Obligations shall become at once due and payable, without notice, presentation, demand or protest, which are hereby expressly waived; (ii) Secured Party is authorized to take possession of the Collateral and, for that purpose, may enter any premises where the Collateral, or any part thereof is located and remove the same, Debtor hereby waiving all rights to prior notice and judicial hearing with respect thereto, (iii) Secured Party may require Debtor to assemble the Collateral and to make it available to Secured Party at a place designated by Secured Party which reasonably convenient to Secured Party and Debtor; (iv) Secured Party shall have the right, from time to time, to sell, resell, assign, transfer and deliver all or any part of the Collateral at any broker's board or exchange, or at a public or private sale or otherwise, at the option of Secured Party, for cash or on credit for future delivery, in such parcel(s) and at such time(s) and place(s), and upon such terms and conditions as Secured Party deems proper, and in connection therewith may grant options and may impose reasonable conditions (such as requiring any purchaser to represent that any stock constituting part of the Collateral is being purchased for investment purposes only), all without advertisement or demand upon or notice to Debtor or right of redemption of Debtor, which are hereby expressly waived to the extent allowed by law; (v) Secured Party shall, upon mailing notice to Debtor, have from the date of such mailing the right from time to time to vote shares of stock securing any Obligations; (vi) Secured Party's obligation, if any, to give additional (or to continue) financial accommodations of any kind to Debtor shall immediately terminate; and (vii) upon each sale, Secured party may, unless prohibited by statute which cannot be waived, purchase all or any part of the Collateral free from and discharged of all trusts, claims, rights of redemption and equities of Debtor which are hereby waived and released.

VII. **RIGHTS OF SECURED PARTY.** Secured Party may, but is not obligated to, (a) demand, sue for, collect or receive any money or property at any time due, payable or receivable on account of or in exchange for any debt securing any of the Obligations, (b) compromise and settle with any person liable on such debt, and/or (c) extend the time of payment of or otherwise change the terms thereof, as to any party liable thereon, without incurring responsibility to any Obligor or affecting any of the Obligations in order to effectuate this Agreement, Debtor hereby designates and appoints Secured Party and its designees or agents as attorney-in-fact of Debtor, irrevocably and with power of substitution, with authority to receive, open and dispose of all mail addressed to Debtor, to notify Post Office authorities to change the address for delivery of mail addressed to Debtor to such address as Secured Party may designate, to endorse Debtor's name on any notes, acceptances, checks, drafts, money orders, instruments or other evidences of payment or proceeds of the Collateral that may come into Secured Party's possession; to sign the name of Debtor on any invoices, documents, drafts against and notices to account debtors or obligors or Debtor, assignments and requests for verification of accounts; to execute proofs of claim and loss; to execute any endorsements, assignments, or other instruments of conveyance or transfer, to adjust and compromise any claims under insurance policies; to execute releases, and to do all other acts and things necessary and advisable in the sole discretion of Secured Party to carry out and enforce this Agreement. All acts of said attorney or designee are hereby ratified and approved and said attorney or designee shall not be liable for any acts of commission or omission nor for any error of judgment or mistake of fact or law. This power of attorney being coupled with an interest is irrevocable while any of the Obligations shall remain unpaid or if there is any letter of credit or other commitment of Secured Party which could result in the creation of Obligations. If any of the Obligations are referred to an attorney for collection, Debtor will be liable for reasonable attorneys fees not to exceed 25% of the unpaid balance of principal and interest of such Obligation(s) referred for collection.

## DEBTOR'S EXHIBIT 4

VIII. **SET-OFF** Every account of Debtor with, and each claim of Debtor against the Secured Party, existing from time to time, shall be subject to a lien and security interest in favor of Secured Party and subject to be set off against any and all Obligations in such order as Secured party in its sole discretion may determine; and the Secured Party may from time to time at its option and without notice appropriate and apply toward the payment of any of the Obligations the balance of each account of Debtor with, and each claim of Debtor against, Secured Party, and Debtor will continue liable to the Secured Party for any deficiency with interest.

IX. **LOANS AND ADVANCES.** Nothing herein contained shall be construed as obligating Secured Party to make any particular loan or advance to Debtor, all such loans or advances shall be within the sole discretion of Secured Party.

X. **TERMINATION.** This Agreement may be terminated by Debtor upon actual delivery of written notice to Secured Party of such intention and payment in full of all outstanding Obligations, provided, however, that (a) such notice and payment shall in no way affect, and this Agreement shall remain fully operative as to, any transactions entered into. Obligations incurred or commitments by Secured Party that could result in the creation of Obligations, prior to receipt of such notice by Secured Party, and (b) prior to such termination, this Agreement shall be a continuing agreement in every respect.

XI. **NO WAIVER: REMEDIES CUMULATIVE.** Secured Party shall not be deemed to have waived any of its rights, remedies, options or powers hereunder by reason of the following:
   A. delay in any exercise thereof;
   B. partial or single exercise thereof; or
   C. prior failure to exercise, or waiver of, any such right, remedy, option or power.

All powers and rights granted to Secured Party hereunder or under any document evidencing any Obligation shall be cumulative and in addition to the Secured Party's powers and rights under applicable law. If this Agreement is signed by two or more parties as debtors, they shall be jointly and severally liable hereunder, and the term "Debtor" shall mean each and every party signing this Agreement. The use of the singular herein may also refer to the plural, and vice versa and the use of the neuter or any gender shall be applicable to any other gender, or to the neuter.

XII. **NOTICE OF ACCEPTANCE WAIVED.** Notice of acceptance of this Agreement by Secured Party is hereby waived. This Agreement shall be immediately binding upon Debtor and its successors and assigns, when signed by or on behalf of the Debtor.

XIII. **GOVERNING LAW: SEVERABILITY.** This Agreement shall be construed in accordance with and governed by the internal laws of the State of Maryland. If any part of this Agreement is declared to be invalid or unenforceable, then such invalidity or unenforceability shall not affect the remainder of this Agreement which shall continue in full force and effect and any provision that may be invalid or unenforceable in one or more applications shall remain in full force and effect for any valid application or applications.

XIV. **LOAN COVENANTS.** In addition to the other terms and conditions contained herein, Debtor represents, warrants and covenants that:
   A. The Business will be continued and the proceeds of any Obligations will be used only in connection therewith and for the following purposes:
   B. Without the prior written consent of the Secured Party, no dividends, stock, redemption, payments, commissions, salary, bonuses or other compensation will be paid in any twelve-month period (in cash or otherwise) to any officer, stockholder, director, partner or proprietor except.
   C. Its current assets will be maintained in excess of current liabilities by at least $ _____; current assets excluding inter-company notes and accounts receivable and liabilities to be determined according to generally accepted accounting principals, including in current liabilities all payments under the Obligations which shall fall due within any twelve-month period
   D. It shall make no further investment in non-current assets in excess of $ _____ (which shall include fixed assets and capitalized value of leased equipment and leased real property) in any twelve-month period without the prior written consent of Secured Party.
   E. It will maintain a key man life insurance policy in the amount of $_____ on the life of _____ of Debtor.
   F. Debtor will, at all times, maintain a tangible net worth of not less than $ _____.
   G. Debtor shall cause the following debt to be subordinated (in such form as Secured Party requires) to the Obligations:

   _____         _____
   (Junior Creditor)

   H. Debtor shall supply Secured Party with Debtor's balance sheet and statement of operations, with the unqualified opinions of the Certified Public Accountant satisfactory to Secured party, within ninety (90) days after each accounting year of Debtor. Debtor also will supply Secured Party with internal statements, signed by an executive officer of Debtor every quarter year of Debtor's operations and will deliver same to Secured Party within thirty (30) days after the end of each such quarter.

   I. Until the loan is paid in full, Borrower shall not incur any debt at any financial institutions with out the prior written consent of the Bank.

**DEBTOR'S EXHIBIT 4**

XV.    **HEADINGS.** The headings used in the sections, subsection, and sub-subsections of this Agreement are for convenience only and are not to be deemed to be part of this Agreement.

**IN WITNESS WHEREOF**, the Debtor has duly executed or caused to be executed this Business Loan Security Agreement, under seal, this 15th day of March 2011.

ATTEST OR WITNESS:

The Innovative Technologies Group & Co., Ltd.

By: _____
Robert L. Wilt, President

Address of Chief Place of Business:

10240 Old Columbia Road

Columbia, Maryland 21046

Address of Location of Books and Records Relating to Collateral

_____

_____

Other Business Addresses: (if none, state "none")

None

BTC\10997

**DEBTOR'S EXHIBIT 4**