Entered: September 16th, 2025
Signed: September 16th, 2025

**SO ORDERED**

For the reasons stated at the hearing held on September 15, 2025.



DAVID E. RICE
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| In re<br><br>**THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD**<br><br>Debtor in Possession. | CASE NO.  **25-18000-DER**<br><br>Chapter 11 |

**CONSENT ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO SANDY SPRING BANK, A DIVISION OF ATLANTIC UNION BANK, PURSUANT TO 11 U.S.C. § 363**

The Innovative Technologies Group & Co. LTD (the "**Debtor**") and Sandy Spring Bank, a division of Atlantic Union Bank ("**Sandy Spring**" or the "**Lender**"), by their undersigned counsel, hereby file this *Consent Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Sandy Spring Bank, a Division of Atlantic Union Bank, Pursuant to 11 U.S.C. § 363* (the "**Order**"), and STIPULATE AND AGREE as follows:

**RECITALS**

A.     On or about August 29, 2025 (the "**Petition Date**"), the Debtor commenced the above-captioned Chapter 11 bankruptcy case (the "**Bankruptcy Case**") by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code as amended (the "**Bankruptcy**

Code") in the United States Bankruptcy Court for the District of Maryland (the "**Court**"). The Debtor is operating its business and managing its financial affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. This Court has jurisdiction over the Bankruptcy Case, and the parties and property affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding constitutes a core proceeding as defined in 28 U.S.C. § 157.

C. The Debtor is specialized manufacturer of process and quality control optical instruments that has been operating for over twenty-five years.

D. As of the Petition Date, the Debtor was indebted to Sandy Spring in the total amount of $58,953.10 (the "**Prepetition Indebtedness**").

E. The Prepetition Indebtedness is evidenced by, *inter alia*: a Promissory Note dated March 15, 2011, executed and delivered by the Debtor to Sandy Spring, as amended from time to time including, without limitation, that certain Change In Terms Agreement dated October 30, 2019 (collectively, the "**Note**"); and a Business Loan Agreement dated October 30, 2019, by and between the Debtor and Sandy Spring (the "**Loan Agreement**").

F. In order to secure the Prepetition Indebtedness and the ITPROP Indebtedness (discussed below) due and owing to Sandy Spring, the Debtor previously granted a security interest in the collateral described in the Note, including, but not limited to, all inventory, chattel paper, accounts, equipment, and general proceeds of the Debtor and the proceeds thereof and related thereto (the "**Prepetition Collateral**").

G. Sandy Spring's security interest in the Prepetition Collateral was properly perfected by virtue of a UCC-1 Financing Statement recorded with the Maryland State Department of Assessments and Taxation as filing number No. 0000000181416671 (the "**Financing Statement**"), as amended and continued from time to time.

H. The Prepetition Indebtedness is secured by a valid, perfected and enforceable lien on all of the Prepetition Collateral.

I.  The Prepetition Indebtedness is also secured by an Indemnity Deed of Trust dated October 30, 2019, executed and delivered by non-debtors Robert R. Wilt and Cathy L. Wilt to the trustees named therein for the benefit of Sandy Spring (the "**Deed of Trust**").

J.  The Note, the Loan Agreement, the Financing Statement, the Deed of Trust, and any and all other documents or instruments evidencing, securing or relating to the Prepetition Indebtedness are hereinafter collectively referred to as the "**Loan Documents**."

K.  As of the Petition Date, non-Debtor ITPROP LLC ("ITPROP"), an insider of the Debtor, was also indebted to Sandy Spring in the total amount of $220,492.18 (the "**ITPROP Indebtedness**").

L.  The ITPROP Indebtedness is evidenced by, *inter alia* a Term Promissory Note dated March 15, 2011, executed and delivered by ITPROP to Sandy Spring in the principal amount of $356,500.00 (the "**ITPROP Note**") and a Guaranty Agreement dated March 15, 2011, executed and delivered by the Debtor to Sandy Spring (the "**ITPROP Note Guaranty**"), pursuant to which the Debtor unconditionally and irrevocably guaranteed the ITPROP Note and the ITPROP Indebtedness.

M.  The Debtor also executed a Business Loan Security Agreement dated March 15, 2011, delivered to Sandy Spring (the "**ITPROP Note Security Agreement**"), pledging its assets as additional collateral for the ITPROP Note. The Financing Statement also secures the ITPROP Indebtedness.

N.  The ITPROP Note, the ITPROP Note Guaranty, the ITPROP Note Security Agreement, the Financing Statement, and any and all other documents or instruments evidencing, securing or relating to the ITPROP Indebtedness are hereinafter collectively referred to as the "**ITPROP Loan Documents**."

O.  The ITPROP Indebtedness is secured by a valid, perfected and enforceable lien on all of the Prepetition Collateral.

P.All of the Debtor's cash on hand and the proceeds generated by the Prepetition Collateral constitute the "cash collateral" of the Lender within the meaning of Bankruptcy Code Section 363(a).

Q.The Debtor represents that it requires the use of Cash Collateral (defined below) and that the need for use of Cash Collateral is immediate and urgent.  The Debtor further represents that the relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and to preserve the value of its assets.

R.As a result of the Lender's liens upon, and security interests in, the Prepetition Collateral, and by virtue of Bankruptcy Code section 363(c)(2), the Debtor is unable to use the Cash Collateral without the consent of the Lender or the authorization of the Court after notice and a hearing.  The Debtor has an immediate need for the use of cash for the preservation, maintenance and continued operation of its business and has requested that the Lender consent to the use of Cash Collateral.  Therefore, the parties request the entry of this Order of the Court pursuant to Bankruptcy Rule 4001(b)(2) (the "**Order**"), effective upon entry, to allow the Debtor the use of Cash Collateral for the preservation of the bankruptcy estate and the maintenance and continued operation of the Debtor.

S.The Debtor has filed a Motion for Entry of Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 (the "Motion") by which, with the Lender's consent, it has requested the continued use of Cash Collateral for the purposes described herein and in the Motion**.**

T.<u>Acknowledgement of Debt</u>.  The Debtor hereby acknowledges and agrees that the Debtor is liable to the Lender in the amount of the Prepetition Indebtedness and the ITPROP Indebtedness plus amounts accruing post-petition.

U.<u>Validity of Claims</u>.  The Debtor acknowledges and agrees to the following:

i.The Debtor is obligated to the Lender under the Loan Documents in the amount of the Prepetition Indebtedness.  The Prepetition Indebtedness is valid and enforceable in accordance with the terms of the Loan Documents, and is not subject to any right of offset, defense,

claim or counterclaim of any type whatsoever. Any and all claims or defenses against Lender, whether known or unknown, at law or in equity, from the beginning of the world through this date are expressly waived and released by the Debtor and its bankruptcy estate.

    ii.    The Debtor is obligated to the Lender under the ITPROP Loan Documents in the amount of the ITPROP Indebtedness. The ITPROP Indebtedness is valid and enforceable in accordance with the terms of the ITPROP Loan Documents, and is not subject to any right of offset, defense, claim or counterclaim of any type whatsoever. Any and all claims or defenses against Lender, whether known or unknown, at law or in equity, from the beginning of the world through this date are expressly waived and released by the Debtor and its bankruptcy estate.

    iii.    The Prepetition Indebtedness constitutes an allowed claim under the Bankruptcy Code.

    iv.    The Lender holds valid, perfected, non-avoidable, first-priority security interests in, liens on, and rights to, among other things, the Prepetition Collateral and Cash Collateral, before and after the commencement of the Debtor's Bankruptcy Case.

    v.    Nothing contained herein prohibits the Debtor from curing and reinstating the Debtor's obligations to Lender or modifying the rights of Lender pursuant to a confirmed Chapter 11 Plan.

    vi.    The parties agree that Sandy Spring's secured claim shall be established at $58,953.10 as evidenced by its Proof of Claim to be filed.

    vii.    Sandy Spring's secured claim shall be paid pursuant to the terms and conditions of the Note and the Loan Documents.

    viii.    The parties agree that Debtor's monthly payments on the Prepetition Indebtedness were current though July of 2025, but that the payment for the month of August 2025 of $533.29 is outstanding and immediately due and owing, the Debtor having been unable to make the August 2025 payment due to a garnishment that was placed on its accounts.

    ix.    The parties agree that interest/adequate protection payments on Sandy Spring's secured claim of $58,953.10 shall consist of the Debtor continuing to make monthly

payments on the Prepetition Indebtedness off $533.29 monthly, as directed by the Loan Documents.

**NOW THEREFORE**, upon consideration of the Motion and the foregoing stipulations and admissions of the Debtor and the Lender, it is by the United States Bankruptcy Court for the District of Maryland, hereby **ORDERED, ADJUDGED, AND DECREED:**

1. <u>Incorporation by Reference</u>. The foregoing recitals and admissions of the Debtor and the Lender are incorporated by reference into this Order.

2. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), involving matters concerning the use of cash collateral under Section 363 of the Bankruptcy Code. Venue over this matter is proper in this Court pursuant to 28 U.S.C. § 1408.

3. <u>Notice</u>. The Debtor has provided adequate and proper notice of the Motion and this Order to the Lender and all creditors and other parties-in-interest in this Chapter 11 Case in accordance with Sections 102, 105, 361, and 363 of the Bankruptcy Code and Federal Bankruptcy Rule 4001, and no other or further notice need be provided as a condition to the entry of this Order.

4. <u>Collection And Use of Cash Collateral</u>.

    a. <u>Cash Collateral Defined</u>. "Cash Collateral" includes, without limitation, all cash, negotiable instruments, documents of title, securities, chattel paper, deposit accounts, or other cash equivalents whenever acquired in which the Debtor has an interest, and includes any and all proceeds, products, offspring, rents or profits of property and all fees, charges, accounts or other payments on the Prepetition Collateral or otherwise generated by or derived from the Prepetition Collateral (collectively, "**Cash Collateral**").

    b. <u>Permitted Uses of Cash Collateral</u>. Subject to the terms of this Order, the Lender hereby consents to the Debtor's use of Cash Collateral, solely for the purpose of operating Debtor's business consistent with Debtor's Monthly Operating Reports as those reports are hereafter filed with the Court.

c. <u>Segregation of Cash Collateral</u>.  The Debtor shall hold all of the Cash Collateral in the Debtor's debtor in possession ("**DIP**") account.  To the extent that the Debtor receive funds that, for whatever reason, are determined not to be part of the Cash Collateral, those funds shall be held in a separate account opened following notice to parties in interest and approval of the Court, and shall remain segregated from the Cash Collateral.

d. <u>Budgeted Use of Cash Collateral</u>.  The Debtor may use the Cash Collateral as set forth in the Budget/Monthly Operating Report which may vary from month to month for the specific purposes set forth in the Budget for the Budget Period commencing *nunc pro tunc* from August 29, 2025 through the Court's consideration of the Debtor's Plan of Reorganization, or such later date as may be agreed to in writing by the Lender and the Debtor and approved by the Court (the "**Budget Period**").

e. <u>Reporting</u>.  The Debtor shall provide to the Lender and the Lender's counsel the following:

i. A Cash Balance Report (showing deposits and disbursements) and a Variance Report (comparing Budget to actual figures) (collectively, the "**Cash Collateral Reports**"), on a monthly basis covering the prior month period; and

ii. The Debtor's monthly operating reports, which the Debtor is required to file with the Court, for each month in the Budget Period (each, a "**MOR**," and together with the Cash Collateral Reports, the "**Reports**") shall be provided to Lender by the deadline established by the Court.  The Reports shall be mailed or sent electronically to the following address:

<u>The Lender's counsel:</u>
Michael D. Nord, Esquire
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
Email: mnord@gebsmith.com

f. <u>Adequate Protection Payments</u>.  As and for adequate protection of the Lender's interest in and consent to use of the Cash Collateral, and as security for the Debtor's

7

performance under this Order, the Debtor shall make payments to the Lender in the amount of $533.29 during the Budget Period (each, an "**Adequate Protection Payment**" and collectively, the "**Adequate Protection Payments**"), payable immediately upon entry of this order and then on the tenth (10th) day of the each and every subsequent month (the "**Payment Day**").

        g.      Further Adequate Protection of the Lender's Interests.

              i.      The Lender is hereby granted a replacement lien (the "**Replacement Lien**") on the Prepetition Collateral, including the Debtor's receivables, proceeds and profits thereof (collectively, the "**Post-Petition Collateral**"), with such Replacement Lien being a perfected security interest in and to the Post-Petition Collateral, having the same extent, validity and priority the Lender had in the Prepetition Collateral on the Petition Date; provided, however, that the Post-Petition Collateral shall not include any causes of action, claims, or rights of the Debtor's bankruptcy estate under sections 506, 544, 547, 548, 549, 550, and/or 553 of the Bankruptcy Code ("**Avoidance Actions**"). The Replacement Lien shall be in the same nature and extent as the Lender's pre-petition lien. The Replacement Lien shall be valid, perfected, and enforceable as of the Petition Date without any further action by the Debtor and/or the Lender and without the execution, filing, or recording of any financing statements, security agreements, or other documents.

              ii.      Under section 507(b) of the Bankruptcy Code, if the protection granted above is insufficient to satisfy in full the claims of the Lender, the Lender is hereby granted an allowed claim under section 503(b) of the Bankruptcy Code in the amount of any such insufficiency. Such claim shall have the super-priority provided by section 507(b) of the Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be incurred in this Bankruptcy Case, any conversion of this Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, or otherwise, and no priority claims, are or will be senior to or on a parity with any such claim of the Lender, subject only to fees payable to the U.S. Trustee under 28 U.S.C. § 1930 and fees or costs owing to the Clerk of the Court.

h. <u>Access to Prepetition Collateral</u>. In order to provide further adequate protection to the Lender for the Debtor's use of Cash Collateral, the Debtor:

i. Shall permit the Lender (and its agents) access to inspect the Prepetition Collateral, subject to restrictions imposed on the Debtor by government regulations or applicable non-disclosure agreements as that term is defined in the Loan Documents, on 72 hours notice to the Debtor; and

ii. Shall keep the Prepetition Collateral insured as required by the Loan Documents.

5. <u>Events of Default.</u> The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Order: (i) the Debtor fails to perform any of its obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof, including: (A) the use and disbursement of Cash Collateral except as expressly permitted hereunder; (B) the actual expenditure of Cash Collateral by the Debtor by more than a reasonable amount over Debtor's existing monthly operating expenses with respect to Budget expenditures as expressly permitted hereunder or by order of the Court; (C) the filing of a motion seeking Court approval of the sale of substantially all of the business assets of the Debtor, unless such motion provides for the payment in full of the Lender's claim; (D) the filing of a motion seeking to prime the Lender's first priority lien and security interest; (E) the failure to provide any report, document, or information or to provide access to the Lender as required hereby; (F) the failure to make any payment to the Lender as required hereby; (G) the failure to maintain all necessary insurance as required under the Loan Documents provided that the Lender consents to the Debtor's use of Cash Collateral to pay for such insurance, (H) either of the Debtor's exclusive periods to file and solicit acceptances of a plan is terminated or lifted under Bankruptcy Code Section 1121 or otherwise; (I) a trustee is appointed or elected, or an examiner with the power to operate Debtor's business is appointed, in the Bankruptcy Case; (J) the Bankruptcy Case is converted to a case under Chapter 7 or is dismissed; (K) the Order is reversed, vacated, stayed, amended, or supplemented without the consent of the Lender; (L) relief from the automatic stay

is granted to any party to permit the exercise of remedies with respect to any property of Debtor's estate unless consented to by the Lender; (M) any material representation or warranty, express or implied, made by the Debtor in any certificate, report, expense statement, other financial statement, or other document delivered to the Lender after the Petition Date proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty, or statement not misleading) (for the avoidance of doubt, provision of a document to the Lender (i) by the Debtor constitutes an implied representation and warranty that the contents thereof are true and correct to the best of the Debtor's knowledge; and (ii) by or on behalf of the Debtor that is not what it appears to be shall be deemed a false and misleading representation and warranty).

  6. <u>Remedies Upon Default</u>.

    a. If an Event of Default occurs under this Order, the Lender shall give written notice of any such default to the Debtor and Debtor's counsel of record in the Bankruptcy Case by electronic mail or facsimile (the "<u>Default Notice</u>") with a copy provided directly to the Debtor. Upon receipt of such notice, the Debtor shall have ten (10) business days to cure the Event of Default. Notwithstanding the occurrence of an Event of Default under this Order, Debtor shall be permitted to notice an expedited hearing on three (3) business days' notice so that the Court can determine whether to authorize further use of Cash Collateral.

    b. Upon the expiration of the tenth (10th) business day after delivery of the Default Notice, if the Debtor has not (i) cured the Event of Default that is the subject of the Default Notice, or (ii) noticed an expedited hearing before the Court with respect to the Event of Default that is the subject of the Default Notice, the Debtor's rights to use Cash Collateral shall immediately cease without further notice, and the Lender shall then be permitted to notice an expedited hearing on three (3) business days' notice (with service upon the U.S. Trustee and those parties requesting special notice) of any contemplated action so that the Court can determine whether to grant the Lender relief from the automatic stay. Furthermore, to the extent not already

held in the DIP Account, the Debtor shall hold and segregate all Cash Collateral in trust for the Lender.

7. <u>Right to Terminate Use of Cash Collateral</u>.  Lender may move the Court on five (5) days' notice for an order terminating the Debtor's right to use Cash Collateral for any of the following reasons: lack of adequate protection, relief from the automatic stay being granted to any party to permit the exercise of remedies with respect to any property of Debtor's estate that constitutes Lender's Collateral, failure to obtain Court approval of the terms of this Order, and/or the occurrence of one of the events set forth in paragraph 5 hereof unless otherwise cured.

8. <u>Non-Budgeted Expenditures</u>.  In the event the Debtor wishes to make an expenditure of Cash Collateral not expressly provided for in the Budget, the Debtor shall notify the Lender seven (7) calendar days before payment or use of Cash Collateral in writing of the amount and nature of the proposed expenditure and provide to the Lender such supporting documentation as may be necessary for the Lender to evaluate the necessity and propriety of the proposed expense.  In the event that the Debtor does not receive written approval from the Lender for the proposed use within five (5) business days of the request, the request shall be deemed denied by the Lender.  In the event that the Lender consents in writing to the Debtor's expenditure of Cash Collateral, which consent shall be in the sole and absolute discretion, opinion and judgment of the Lender, then the Debtor shall be entitled to expend Cash Collateral subject to the terms of this Agreement as authorized by the Lender in writing.  In the event that the Debtor's request is denied by the Lender in writing, the Debtor shall not use Cash Collateral to pay that expense absent an order of the Court, and the Lender agrees that the Debtor may present its request to the Court on an emergency or *ex parte* basis.

9. <u>Section 364(e) of the Bankruptcy Code</u>.  Having acted in good faith in agreeing to the terms of this Order, the Lender shall be entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the grant of the post-petition liens created and authorized by this Order in the event that this Order or any authorization contained in this Order is stayed, vacated,

11

reversed, or modified on appeal. Any stay, modification, reversal, or vacating of this Order will not affect the validity of any obligation of the Debtor to the Lender incurred under this Order.

10. <u>506(c) Waiver</u>. The Debtor, on behalf of itself and its estate, shall not seek any right to surcharge the Lender under section 506(c) of the Bankruptcy Code or other applicable law for any fees or compensation to attorneys or other professionals employed by the Debtor, or for any other purpose.

11. <u>No Deemed Lender Control</u>. The Lender shall not be deemed to be in "control" of the operations of the Debtor, or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor solely by reason of any credit extended to the Debtor under the Loan Documents and the ITPROP Loan Documents, or the grant to and/or exercise by any successor-in-interest of any rights or remedies hereunder or thereunder.

12. <u>Automatic Stay Modified</u>. The Automatic Stay is hereby modified to the extent necessary to permit the taking of any action or giving of any notice required or permitted by this Order.

13. <u>Authority for the Debtor's Action</u>. The Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments, and agreements necessary to implement and effectuate the terms and conditions of this Order. To the extent this Order is inconsistent with any prior order or pleading with respect to the use of Cash Collateral or grant of adequate protection in this case, the terms of this Order shall govern.

14. <u>Reservation of Rights</u>. This Order does not prejudice the right of the Lender to seek relief from the automatic stay of section 362 of the Bankruptcy Code, or any other relief in this case, including demands for further adequate protection, objections and claims relating to applications or motions for adequate protection, or the use, sale, or other disposition of the Cash Collateral or the Post-Petition Collateral. This Order is also without prejudice to the rights of any party to oppose any such relief requested. Except as otherwise expressly set forth in this Order, this Order is not a waiver or modification of any of the rights of the Lender, including by way of

example and without limitation all rights set forth in the Loan Documents and the ITPROP Loan Documents, and the Lender does not have any obligation or duty to any other entity to exercise any of its rights, remedies, claims, powers, benefits, and privileges.  Any delay in or failure to exercise any of its rights, remedies, claims, powers, benefits, or privileges does not constitute a waiver, nor subject the Lender to any liability to any entity, and no other entity may rely upon any such delay or failure or in any way seek to assert a defense to any obligation owing based on any such delay or failure.

15. <u>Successors and Assigns; Survival</u>.  The provisions of this Order shall be binding upon, and inure to the benefit of, the Lender, the Debtor and the Debtor's estate, and the respective successors and assigns of each of the foregoing (including, but not limited to, any trustee or trustees hereafter appointed or elected under any chapter or section of the Bankruptcy Code as a representative of the Debtor's estate).

16. <u>Effect of Modification of Order</u>.  The terms and conditions set forth in this Order may not be altered, modified, or affected without the prior written consent of the Debtor and the Lender.  If any or all of the provisions of this Order are hereafter modified, vacated, terminated, amended or stayed, the consent to the Debtor's use of Cash Collateral shall cease immediately thereupon; <u>provided</u>, <u>however</u>, that no such occurrence shall affect, limit or modify (a) the validity of any claim for any amounts of Cash Collateral used pursuant to this Order, or (b) the validity, enforceability, priority or perfection of any lien or security interest granted under this Order.

17. <u>Unenforceability</u>.  If the Court does not approve this Order for any reason, then this Order has no effect, and neither the Order nor any action or procedure taken, nor any statement made, in connection with the negotiation, preparation, formulation or seeking approval of this Order may be referred to by any entity in connection with any proceeding or action, whether in this case or elsewhere.

18. <u>No Agreement to Provide Financial Accommodation</u>.  No provision of this Order shall in any way impose upon the Lender any duty or obligation to provide any financing or

financial accommodation to the Debtor or any other party, to collect, sell, lease or otherwise dispose of any of the Lender's collateral, to proceed against any party, person, individual or entity, to proceed against or exhaust any security held by the Lender, or any other party, person, individual or entity, or to otherwise pursue any action, right or remedy in the Lender's power whatsoever. This Order shall not constitute, or be deemed to be, a waiver of any of the Lender's rights or claims under the Loan Documents, the ITPROP Loan Documents or applicable law, or a cure of any default by Debtor under the Loan Documents or the ITPROP Loan Documents.

19. <u>Further Assurances</u>.  All parties, at their expense, will execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered, all such further instruments and documents, take such further action as any party may from time to time reasonably request, in connection with this Order and thereafter for the better assurance and preservation to the parties of their rights hereunder and under all related agreements.

20. <u>Consent and Mutual Agreement</u>.  Whenever any action may be taken under this Order upon the prior written consent of the Lender or the prior mutual written agreement of the Lender and the Debtor, the action may be taken without any further notice or action or order of the Bankruptcy Court.

21. <u>Neutral Construction</u>.  Each of the parties hereto has been involved in the negotiation, review, and execution of this Order and each has had the opportunity to receive independent legal advice from attorneys of its choice with respect to the advisability of making and executing this Order.  In the event of any dispute or controversy regarding this Order, the parties hereto shall be considered to be the joint authors and no provision of this Order shall be interpreted against a party hereto because of authorship.

22. <u>Headings</u>.  The parties acknowledge that the headings set forth herein are for convenience only and shall not be used to limit, define, or interpret the rights and responsibilities of the parties hereunder.

23. <u>Power of Representatives</u>.  Any party executing this Order in a representative capacity warrants that he or she is duly authorized and empowered to do so.

24. <u>Survival of Obligations</u>.  The provisions of this Order and any actions taken in accordance with this Order survive entry of any order that may be entered: (a) confirming any plan in this case, (b) appointing a chapter 7 or chapter 11 trustee, or (c) converting or dismissing this case.  Unless otherwise ordered by the Bankruptcy Court, the claims and liens on the Cash Collateral, on the Prepetition Collateral and the Replacement Liens continue in full force and effect and maintain their priority until all the obligations owed to the Lender under the terms of the Loan Documents, the ITPROP Loan Documents and this Order are paid in full.

25. <u>Binding Effect</u>.  This Order is binding on and inures to the benefit of the Debtor and its estate, any representative of the estate, any trustee, whether under chapter 11 or chapter 7, any examiner with expanded or special powers to operate the estate's business appointed in this case, the Lender, and their respective successors and assigns.

26. <u>Notices</u>.  All notices, requests, demands, reports and accountings given or made upon the respective parties shall be deemed to have been given or made (a) if sent by mail, three (3) days after deposit in the United States mail, postage prepaid, and addressed as follows, (b) upon hand delivery to the addresses below, or (c) if sent by facsimile transmission or email, upon transmission to the facsimile numbers or email addresses, as the case may be, set forth below, or such other address as may be designated in writing:

To Debtor:

> Jeffrey M. Orenstein
> Wolff & Orenstein, LLC
> 15245 Shady Grove Road, Suite 465
> Rockville, MD 20850
> (301) 250-7232
> Email :
> jorenstein@wolawgroup.com

To Lender:

> Michael D. Nord, Esquire
> Gebhardt & Smith LLP
> One South Street, Suite 2200
> Baltimore, Maryland 21202
> Email: mnord@gebsmith.com

27.     <u>Bankruptcy Court Order Approving Order</u>.  This Order shall be submitted forthwith to the United States Bankruptcy Court for approval by the Debtor who shall give such notice and opportunity to be heard as is required under the Federal Rules of Bankruptcy Procedure, or other applicable law.

28.     <u>Preservation of Rights</u>.  Any subsequent vacation or termination of this Order shall not affect, limit or modify (a) the validity of the Debtor's use of any amounts of Cash Collateral pursuant to this Order, (b) the validity, enforceability, priority or perfection of any lien or security interest granted to the Lender under this Order, or (c) the scope of the Lender's Cash Collateral as set forth in this Order.  The relief granted herein shall be without prejudice to the rights of the Lender to seek additional adequate protection or any other relief under the Bankruptcy Code or applicable law, including, without limitation, reimbursement from the Debtor or an administrative claim under Section 507(b) of the Bankruptcy Code.

29.     <u>No Violation</u>.  The Debtor expressly, unconditionally and irrevocably agrees, and acknowledges the reliance of the Lender hereon, that neither (a) the entry and execution of this Order, (b) the tender of payments by the Debtor to the Lender in accordance with this Order, nor (c) the application of such payments by the Lender upon the indebtedness and obligations owed to the Lender by the Debtor shall violate or be deemed to violate Maryland Law in any manner or to any extent, it being the express intent of the Debtor and the Lender that the entirety of Lender's Cash Collateral constitutes security for the indebtedness and obligations of the Debtor to the Lender.

30.     <u>Counterparts</u>.  This document may be executed in counterparts, all of which when taken together shall constitute the Order of the parties hereto.  The counterparts to this Order may be circulated by facsimile and/or pdf and the facsimile and/or pdf signatures shall be an original for all purposes.

31. Further extensions of this Order shall be permitted without a hearing subject to notice and no objection being raised.

**End of Order**

**CONSENTED AND AGREED TO:**

By: /s/ Jeffrey M. Orenstein
Jeffrey M. Orenstein (Bar No. 07512)
Wolff & Orenstein, LLC
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 250-7232
jorenstein@wolawgroup.com
*Counsel for Debtor, The Innovative Technologies Group & Co., LTD*


By: */s/ Michael D. Nord*
Michael D. Nord (Bar No. 04395)
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5072
mnord@gebsmith.com
*Counsel for Sandy Spring Bank, a division of Atlantic Union Bank*