IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD,[1]<br><br>　　　　　Debtor. | Case No. 25-18000-DER<br>Chapter 11<br><br>Joint administration requested |

### OBJECTION TO APPLICATION FOR AUTHORITY TO EMPLOY SMITH DUGGAN CORNELL & GOLLUB LLP AS SPECIAL COUNSEL FOR DEBTOR

KPM Analytics North America Corporation ("KPM"), by and through undersigned counsel, files its Objection to Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel for Debtor ("Objection") and in support states as follows:

### Introduction

1. This case is a two-party dispute between KPM and The Innovative Technologies Group & Co., LTD ("Debtor"). The Debtor is using this case as an unlawful mechanism to obtain a bondless appeal of the multi-million-dollar monetary judgment entered against it by the United States District Court for the District of Massachusetts. Based on the Debtor's pre- and post-petition conduct and submissions to this Court, it is clear that the *sole* purpose of the Debtor's bankruptcy is to improperly invoke the protection of the automatic stay as a shield to stop KPM's collection efforts while simultaneously pursuing an appeal of that judgment as a sword to eliminate the very reason for the Debtor's claimed insolvency.

2. Not only does the Debtor's Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel to Debtor [Dkt. No. 19] (the "Application") *admit* that

---

[1] Joint administration with Blue Sun Scientific, LLC, Case No. 25-17998 has been requested.

1

the Debtor's primary motivation in this case is the continuation of the Appeal (defined below),[2] but the Debtor's other pleadings explain that its ordinary course operations are profitable, that all payments to its secured creditor were current through July 2025, that it was generally paying its debts as they came due, and that, but for KPM's judgment, the Debtor would have been able to operate without the intervention of this Court.[3]

3. Moreover, within twelve (12) days of commencing the above-captioned case, the Debtor filed its Application and the related Motion for Relief from the Automatic Stay to Permit Continuance of Appellate Proceedings in the United States Court of Appeals for the First Circuit [Dkt. No. 21] (the "<u>Motion for Relief from Stay</u>").  Twelve days does not provide the breathing spell offered by the Bankruptcy Code, but is further evidence that the sole purpose of this case is to exploit the protections of the automatic stay without complying with the otherwise applicable requirements of the Federal Rules of Civil Procedure.[4]

4. Beyond this abuse of the protections of the automatic stay, KPM objects to the Application on the grounds that the Debtor cannot meet the standard described in Section 327(e) because Special Counsel's employment is not limited to a discrete special purpose, and Special Counsel holds an improper adverse interest.  Indeed, Smith Duggan Cornell & Gollub LLP ("<u>Special Counsel</u>") ***is a creditor of the Debtor's estate*** and is owed $99,000 for legal services performed pre-petition.  Thus, employment of Special Counsel should be governed by the more rigorous standard of Section 327(a), which the Debtor also cannot meet due to Special Counsel's

---

[2] *See* Application at ¶ 25 ("The single most important part of the Debtor's reorganization efforts is the pursuit of its appeal.").

[3] *See* Consent Motion for Entry of Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Sandy Spring Bank, a Division of Atlantic Union Bank, Pursuant to 11 U.S.C. § 363 [Dkt. No. 15].

[4] The Motion for Relief from Stay was withdrawn at [Dkt. No. 28] pending a ruling on the Application.

status as a pre-petition creditor. As such, the Application should be denied and Special Counsel should be disqualified from representing the Debtor during the pendency of this bankruptcy case.

### Background

5. On or about August 29, 2025, the Debtor commenced the above-captioned case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. That same day, the Debtor's wholly owned subsidiary Blue Sun Scientific, LLC ("Blue Sun") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, commencing the case numbered 25-17998-DER.

6. On or about September 10, 2025, the Debtor filed its Application.[5]

7. This bankruptcy case follows KPM's successful prosecution of claims against the Debtor and Blue Sun for misappropriation of trade secrets, tortious interference, and statutory violations for unfair trade practices in the United States District Court for the District of Massachusetts in the case styled as *KPM Analytics North America Corp. v. Blue Sun Scientific, LLC, et al.*, Case Number 4:21-cv-10572-MRG (D. Mass.) (the "Massachusetts Case").

8. In February 2025, following a 9-day jury trial, the U.S. District Court for the District of Massachusetts entered a permanent injunction and monetary judgments against the Debtor and Blue Sun, jointly and severally, in the principal amount of $3 million, plus an additional judgment against the Debtor in the amount of $3.6 million, plus an additional $1.5 million in attorneys' fees, over $271,000 in costs, as well as pre- and post-judgment interest. A copy of the Final Judgment and Permanent Injunction ("Judgment") is attached as **Exhibit A**.

9. On March 4, 2025, the Debtor and Blue Sun noted an appeal to the United States Court of Appeals for the First Circuit, commencing case number 25-1222 (the "Appeal").

---

[5] As of the date of this Objection, Blue Sun has not filed an application to employ special counsel despite its having indicated an intent to do so.

3

10. Neither the Debtor nor Blue Sun sought a stay of enforcement pending appeal, despite the familiar procedure available under the Federal Rules of Civil Procedure – namely, by posting a *supersedeas* bond. *See* Fed. R. Civ. P. 62(b).

11. Shortly after KPM registered the judgment in this District and began enforcement efforts, the Debtor and Blue Sun filed bankruptcy. *See KPM Analytics North America Corp. v. Blue Sun Scientific, LLC, et al.*, Case No. 25-mc-474 (D. Md.) (filed July 30, 2025) and, in particular, Dkt. Nos. 64, 65, 66 (August 21, 2025 Orders directing the Debtor, Blue Sun, and their principal Robert Wilt to appear for examination).

## Legal Standard

12. Section 327 of the Bankruptcy Code governs, *inter alia*, a debtor in possession's retention of professionals in its bankruptcy case. "This provision is intended to ensure 'that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Johnson*, 312 B.R. 810, 819 (E.D. Va. 2004) (quoting *Rome v. Branstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

13. The Application is filed under Section 327(e), which provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

14. Section 327(e) provides a lower threshold for employing legal counsel than Section 327(a). For example, special counsel is not required to be a disinterested person under Section 327(e). 11 U.S.C. § 327(e). However, retention of counsel under Section 327(e) must be for a specified special purpose, meaning "the trustee is not permitted to use this section to

4

employ counsel to assist him in the general administration of the estate." *In re Roper and Twardowsky, LLC*, 566 B.R. 734, 750 (Bankr. D.N.J. 2017).

15. An "adverse interest" has been held to exist when a professional (1) possesses or asserts any economic interest that would tend to lessen the value of the estate or that would create either an actual or potential dispute in which the estate is a rival claimant or (2) possesses a predisposition under circumstances that render such a bias against the estate. *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 314 (Bankr. S.D.N.Y. 2016).

16. "When the 'adverse interest' specter looms like a dark cloud over a professional's employment under § 327(e), the court must closely scrutinize the proposed 'special purpose' for that employment before it can properly consider the 'adverse interest' and 'best interest of the estate' tests." *In re Running Horse, L.L.C.*, 371 B.R. 446, 452 (Bankr. E.D. Cal. 2007) (citations omitted). The court may look at the totality of the circumstances to determine whether the scope of work will, or has been, properly limited to a special purpose within the meaning of § 327(e), including the actual services performed by counsel before and after commencement of the case. *Id.*

17. If proposed counsel cannot meet the standards of Section 327(e), they can only be employed through Section 327(a), which provides –

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

18. The term "disinterested person" means, among other things, a person that "is not a creditor, an equity security holder, or an insider." 11 U.S.C. § 101(14).

## Argument

**I. The Entire Bankruptcy Case is Tainted by the Debtor's Abuse of the Automatic Stay.**

19. The Debtor's attempt to obtain a bondless appeal through this bankruptcy case constitutes an abuse of the protections provided by the automatic stay. The Judgment is the origin of the Debtor's cited financial troubles, which was entered after the District of Massachusetts found the Debtor and Blue Sun liable for misappropriation of trade secrets, tortious interference, and statutory violations for unfair trade practices. The Debtor's filings admit that its sole motivation for filing this case is to overturn the Judgment through the pursuit of the Appeal. The protections provided by the automatic stay allow the Debtor to continue its goal, while simultaneously preventing all other creditors from exercising their rights. The automatic stay should not be used as both a sword and shield in this manner.

20. At its core, this case is a two-party dispute between KPM and the Debtor. "Two-party disputes (where the two sides are a single creditor on one side and the debtor, its management and owners on the other) are not appropriate vehicles for invoking the Bankruptcy Code's chapter 11 provisions." *In re N. Vermont Assocs., L.P.*, 165 B.R. 340, 343 (Bankr. D.D.C. 1994). Notably bankruptcy was not the sole option available to the Debtor, and it could have obtained the benefit that the automatic stay provides through different means. Federal Rule 62(b) provides in part: "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). The Debtor made no attempt to obtain a stay pending appeal prior to filing bankruptcy. As such, the Debtor's actions constitute an abuse of the protections provided by the automatic stay particularly when its ordinary course operations are profitable.

6

**II. The Debtor Cannot Satisfy the Requirements to Appoint Special Counsel.**

21. For the reasons discussed below, the Debtor cannot meet the requirements of Section 327(e) or (a) and the Application should be denied. The proposed employment of Special Counsel is inappropriate under Section 327(e) because Special Counsel's proposed role is not limited to a discrete, special purpose, but rather is integral to representing the debtor-in-possession in the administration of the case, as it involves prosecuting the Appeal – a de facto objection to KPM's claim – which directly impacts the estate's largest creditor, KPM. Moreover, Special Counsel holds an adverse interest because it is a significant pre-petition creditor with a substantial financial interest in the outcome of the Appeal. Further, employment of Special Counsel cannot meet the more rigorous standard of Section 327(a) because it is not a disinterested person due to its pre-petition claim against the estate. As such, the Application should be denied accordingly.

> *A. Employment of Special Counsel Under Section 327(e) is Inappropriate Because the Scope of Special Counsel's Role is Not for a Discrete Special Purpose; Rather, Special Counsel Will Have a Role in Representing the Debtor in Conducting the Case.*

22. Contrary to the express requirements of Section 327(e), Special Counsel's employment is not limited to a discrete special purpose, but, instead, will have a much broader application. Section 327(e) clearly and unequivocally allows employment of special counsel only for a "specified special purpose other than to represent the trustee in conducting the case." 11 U.S.C. § 327(e).

23. KPM intends to file a proof of claim based on the Judgment. The Appeal is the Debtor's primary vehicle to challenge the Judgment's validity and basis and thus functions as an informal objection to KPM's forthcoming claim.

7

24. By prosecuting the Appeal, Special Counsel is in effect performing an essential estate function – prosecuting a claim objection. Because claim objections are integral to representing the Debtor in conducting the case, and given the immense importance the Appeal is to the Debtor's case, Special Counsel's employment should be governed by Section 327(a), not Section 327(e).

25. The Debtor should not be permitted to circumvent the requirements of Section 327(a) by designating the Appeal (i.e. the **_sole purpose of the case_**) as a "special purpose." Furthermore, absent the bankruptcy case *Special Counsel would be making all litigation decisions*. By seeking to continue the Appeal, the Debtor is essentially handing control to Special Counsel, effectively eclipsing bankruptcy counsel. Special Counsel, not bankruptcy counsel, would be directing the case.

26. Caselaw from sister courts supports analyzing the Application under Section 327(a) over Section 327(e) in this situation. In *In re Neuman*, 138 B.R. 683, 684-85 (S.D.N.Y. 1992), a Chapter 7 trustee sought to employ a law firm as special counsel to assist the trustee with litigation concerning medically related claims asserted by the United States – the largest creditor in the case – through the Department of Health and Human Services. The bankruptcy court approved the employment pursuant to Section 327(e). *Id.* at 685. On appeal, the district court reversed, holding the proposed counsel's employment was too closely related to conducting the case to warrant appointment pursuant to Section 327(e). *Id.* at 686.

27. The district court explained that the proposed firm's work straddled both a "special purpose" under Section 327(e) and case administration under Section 327(a). *Id.* at 686. The court thus concluded: "[w]e think it is clear both from the language of § 327(e) and from the

8

framework of § 327 more generally that, even if there is a special purpose, it is crucial that the appointment not be part of the trustee's general duty of conducting the case." *Id.*

28. The court supported this conclusion for two reasons. First, the plain text of Section 327(e) rules out special purposes that involve representing the trustee in conducting the case. *Id.* at 686. Second, disinterestedness is a requirement for anyone representing the trustee in conducting any part of the case per Section 327(a). *Id.* Specifically, the court writes:

> There is no reason to suppose that disinterestedness is any less important when only some of the claims are being evaluated than it is when all of the claims are being evaluated. The need for disinterestedness is apparent from the situation here, where [proposed counsel] is a pre-petition creditor and the total claims exceed the total debts, so that [proposed counsel] has a financial interest in casting doubt on the validity of any other creditor's claim. We note that in the more typical § 327(e) appointment, special counsel is employed in litigation that would have the effect, if successful, of increasing or preserving the estate's assets for *all* prepetition creditors. By contrast, investigation of the Government's claims in this case would have the potential to increase the returns of some creditors (including [proposed counsel]), at the expense of one creditor (the Appellant).

*Id.* (emphasis in original).

29. Thus, because the proposed engagement was intertwined with conducting the case, the court required employment under Section 327(a). *Id.* at 686.

30. The court in *In re Argus Group 1700, Inc.*, 199 B.R. 525 (Bankr. E.D.Pa. 1996), reached a similar conclusion. In *Argus*, the debtor sought to retain its pre-petition counsel under Section 327(e) to continue litigation against its limited partner and certain related entities. *Id.* at 528. The limited partner objected, arguing *inter alia* that employment of special counsel should be governed by Section 327(a) given the broadly contemplated role of special counsel as detailed in the application to employ. *Id.* at 530. The court agreed and applied Section 327(a), emphasizing that: (1) the continuation of pre-petition litigation was the dominant driver of the

9

case, (2) the debtor had few creditors amongst which a reorganization could be structured, (3) secured obligations were current, and (4) the debtor intended to resume litigation immediately after filing. *Id.* at 530-531. Concluding that litigation was "preeminent" and proposed litigation counsel the primary legal advisor rather than bankruptcy counsel, the court held that the stricter Section 327(a) standard governed the proposed employment. *Id.* at 531.

31. Here, Special Counsel's role is so intertwined with representing the Debtor in the bankruptcy case that its employment should be governed by Section 327(a). Special Counsel will be prosecuting a de facto claim objection through the Appeal and, therefore, has the potential to eclipse bankruptcy counsel as the primary legal advisor given the Debtor's interests in the Appeal. As such, the Debtor cannot meet the special purpose requirement of Section 327(e), and an analysis of employment pursuant to Section 327(a) is more appropriate.

**B. Employment of Special Counsel under Section 327(e) Should Be Denied Because Special Counsel Holds an Adverse Interest to the Estate and Has an Improper Financial Motivation.**

32. Special Counsel holds an adverse interest to the estate through its status as a pre-petition creditor and has a financial interest in prosecuting the Appeal. The Debtor's Schedule E/F [Dkt. No. 1] lists total unsecured claims of $11,365,583.50 of which $123,387.92 is scheduled as priority, and the remaining $11,242,195.58 is scheduled as general unsecured debt. KPM's Judgment is scheduled at a value of $10,092,992.14 in Schedule E/F, which is 88% of the Debtor's *total* unsecured debt. KPM's Judgment is the largest scheduled unsecured claim against the Debtor. Special Counsel holds the fourth largest unsecured claim scheduled against the Debtor. Per the Application and Schedule E/F, Special Counsel is owed $99,000 for pre-petition legal services.

10

33. Special Counsel has a substantial financial interest in overturning the Judgment. If the Judgment is vacated, the likelihood that Special Counsel will be paid in full on its pre-petition claim markedly increases. Eliminating a $10,092,992.14 claim against a debtor that is otherwise paying its debts as they come due materially enhances Special Counsel's prospects of full payment for its pre-petition legal services. Accordingly, Special Counsel is motivated to increase its own recovery at the expense of a single creditor, KPM. It is wholly inappropriate to allow a law firm with such a large incentive to undercut KPM's Judgment to represent the Debtor.

34. Additionally, given Special Counsel's competing interest to increase the amount of a distribution to unsecured creditors for its own benefit, there is a meaningful incentive for Special Counsel to withhold advising the Debtor on a course of conduct if it could result in an unfavorable outcome for Special Counsel. The requirements of Section 327 are intended to ensure that all professionals tender undivided loyalty and provide untainted advice and assistance to the Debtor in furtherance of their fiduciary duties. *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994). As such, employment pursuant to Section 327(e) should be denied because Special Counsel possesses an adverse interest against the estate, and is inappropriately financially motivated to overturn the Judgment.

### C. Special Counsel Cannot Meet the Requirements of Section 327(a) Because it is Not Disinterested; Accordingly, Employment Must be Denied.

35. Special Counsel cannot meet the standard set in Section 327(a) because it is a pre-petition creditor. Section 327(a) expressly disqualifies counsel that is not a disinterested person from representing the debtor. 11 U.S.C. § 327(a). The term "disinterested person" means, among other things, a person that "is not a creditor, an equity security holder, or an insider." 11 U.S.C. § 101(14). The Debtor's schedules list Special Counsel as a creditor, which plainly

11

disqualifies them from representing the Debtor pursuant to Section 327(a). As such, the Application should be denied pursuant to Section 327(a).

36. Additionally, it is worth noting that Special Counsel received preferential treatment in the months leading up to the bankruptcy case to the detriment of other creditors. Blue Sun's Statement of Financial Affairs [Case No. 25-17998, Dkt. No. 1] reveal that **Special Counsel received payments totaling $80,000.00 in the two months leading up to the bankruptcy case**. Evidently the Debtor and Blue Sun deemed it acceptable to pay Special Counsel for *its* legal services, yet left their *other pre-petition counsel*, Gordon Feinblatt, LLC, without payment. Nor did the Debtor and Blue Sun make any attempt to satisfy the Judgment owed to KPM. The Debtor and Blue Sun paid Special Counsel over other similarly situated unsecured creditors, which constitutes a preference under the Bankruptcy Code. The existence of a preference claim by the estate against Special Counsel further supports KPM's argument that Special Counsel holds an adverse interest to the estate and is not a disqualified person under Section 327(a).

37. In the event employment of Special Counsel is approved, KPM reserves its right to object to all applications for payment of its attorney's fees.

## Conclusion

38. KPM respectfully requests that the Application be denied for the reasons stated in this Objection.

WHEREFORE, KPM respectfully requests the Court enter an order denying the Application, disqualifying Special Counsel from representing the Debtor during the pendency of this bankruptcy case, and granting KPM such other relief the Court deems proper.

Dated September 24, 2025

Respectfully submitted,

*/s/ Addison J. Chappell*
Addison J. Chappell, Esquire (#21852)
Michael B. Brown, Esquire (#19641)
MILES & STOCKBRIDGE P.C.
100 Light Street, 7th Floor
Baltimore, MD 21202
Telephone: (410) 385-3481
Telephone: (410) 385-3663
achappell@milesstockbridge.com
mbbrown@milesstockbridge.com

*Counsel for KPM Analytics*
*North America Corporation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 24, 2025, a copy of the foregoing Objection together with the exhibit and proposed order was served on all parties requesting service in this case via this Court's CM/ECF electronic noticing system as follows:

- **Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov
- **Michael Benjamin Brown**   mbbrown@milesstockbridge.com, jdiaz@milesstockbridge.com
- **Addison J. Chappell**   achappell@milesstockbridge.com
- **Michael David Nord**   mnord@gebsmith.com
- **Jeffrey M. Orenstein**   jorenstein@wolawgroup.com
- **US Trustee - Baltimore**   USTPRegion04.BA.ECF@USDOJ.GOV
- **Timothy VanCisin**   tvancisin@gebsmith.com
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

                                                */s/ Addison J. Chappell*
                                                Addison J. Chappell