UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

IN RE:                                        *

BLUE SUN SCIENTIFIC, LLC          *      No.  25-17998-DER
                                                        Chapter 11

         Debtor                           *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN RE:                                        *

THE INNOVATIVE TECHNOLOGIES   *      No.  25-18000-DER
 GROUP & CO., LTD                           Chapter 11
                                                   *

         Debtor                                  Jointly administered under Case No.
                                                        25-17998-DER

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD PLAN OF REORGANIZATION

The Innovative Technologies Group & Co., LTD (the "Debtor") proposes this Plan of Reorganization (the  "Plan") pursuant to section 1121 of Title 11 of the United States Code.

## ARTICLE I

### DEFINED TERMS AND RULES OF INTERPRETATION

### 1.      Rules of Construction

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 2.      Definitions

Administrative Expense Claim shall mean any Claim which is entitled to administrative priority status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including,

without limitation, any Claim arising from the assumption of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, fees and expenses of the any Professionals employed by the Debtor, and any taxes incurred during the pendency of this Bankruptcy Case.

Administrative Expense Claim Bar Date shall mean the date that is thirty (30) days after the Effective Date.

Allowed with respect to any Claim shall mean: (i) a Claim against the Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtor or a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any Claim expressly Allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

Atlantic Union shall mean Atlantic Union Bank, successor in inetre4st to Sandy Spring.

Appellate Proceedings shall mean the proceedings in the First Circuit by which review of the KPM Judgment is being sought.

Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and any amendments thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Maryland or any other court having jurisdiction over the Debtor's Chapter 11 case or any proceeding arising under this Chapter 11 Case.

Bankruptcy Rules shall mean (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under § 2075 of Title 28 of the United States Code, (ii) the Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of Title 28 of the United States Code, (iii) the Local Rules of the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this case or proceedings herein, as the case may be.

BFG shall mean Business Finance Group, Inc.

Blue Sun shall mean Blue Sun Scientific, LLC.

Blue Sun Case shall mean In re Blue Sun, LLC, Case No. No.  25-17998, that is pending in this case and that is being jointly administered with the Debtor's bankruptcy case.

Cash Collateral Order shall mean the Consent Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Sandy Spring Bank, a Division of Atlantic Union Bank, Pursuant to 11 U.S.C. § 363, entered by the Court on September 16, 2025.

Cash Infusion shall mean the sum of $25,000.00 that shall be paid by Mr. Wilt in five equal annual installments of $5,000.00 as a new value contribution for his equity interest in the Debtor.

Chapter 11 Case shall mean the above-captioned bankruptcy proceeding initiated by the filing of the Debtor's Petition.

Claim shall have the meaning ascribed to such term in § 101(5) of the Bankruptcy Code.

Class shall mean any class in which Allowed Claims are classified pursuant to Article II of this Plan.

Confirmation Date shall mean the date the entry of the Confirmation Order becomes a Final Order.

Confirmation Order shall mean the Order of the Bankruptcy Court in this Chapter 11 Case confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code.

Court shall mean the United States Bankruptcy Court for the District of Maryland.

Creditor shall mean the Holder of a Claim, within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Claims, and Priority Tax Claims.

Debtor shall mean the Innovative Technologies Group & Co., LTD, the debtor in possession in this Chapter 11 Case.

DIP shall mean debtor in possession which in this Case is the Debtor, as it has continued in possession of its assets and operated its business during the course of this Chapter 11 Case.

Disposable Income shall mean the income or other receipts received or to be received by the Debtor, that is not reasonably necessary to be expended for the payment of amounts necessary for the continuation, preservation, operation, or litigation efforts of the business of the Debtor and that is not required to pay Claims in any senior Class in accordance with the provisions of this Plan.  Professional fees incurred after the Effective Date are expenses that are deemed necessary for the continuation, preservation, operation, or litigation efforts of the business of the Debtor.

District Court shall mean the United States District Court for the District of Massachusetts.

Distributions means any distribution pursuant to the Plan to the Holders of Allowed Claims.

Effective Date shall mean the first business day following the date that is thirty (30) days after the entry of the Confirmation Order.

Executory Contracts shall mean all contracts and unexpired leases to which the Debtor is a party and which are executory within the meaning of § 365 of the Bankruptcy Code.

Expenses shall mean the amounts necessary for the continuation, preservation, operation, or litigation efforts of the business of the Debtor.

Final Order shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired.

First Circuit shall mean the United States Court of Appeals for the First Circuit.

First Circuit Appeal shall mean the Debtor's appeal of the KPM Judgment which had been filed Pre-Petition and which was pending at the time of the filing of the Petition

Holder shall mean (a) as to any Claim, (i) the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or Holder of such Claim has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a Holder of a Secured Claim; and (b) as to any interest, the record owner or Holder of such interest as of the Effective Date. Impaired shall mean any Claim or Interest that is impaired within the meaning of § 1124

Interests shall mean, to the extent applicable to this Chapter 11 Case, the interest of any Holder of stock or membership interests in the Debtor.

ITPROP shall mean  ITPROP LLC.

KPM shall mean KPM Analytics North America Corporation.

KPM Litigation shall mean the Pre-Petition litigation in the District Court that resulted in the KPM Judgment.

4

KPM Judgment shall mean the Judgment entered in the District Court in favor of KPM and against the Debtor, Blue Sun, and a number of individuals.

Mr. Wilt  shall mean Robert Wilt, the Debtor's one hundred percent (100% )owner.

Petition shall mean the Voluntary Petition filed by the Debtor on August 29, 2025.

Petition Date shall mean August 29, 2025.

Plan shall mean the Debtor's Plan of Reorganization in its present form or as it hereafter may be modified, amended or supplemented.

Post-Petition shall mean any event occurring on or after the Petition Date.

Premises shall mean the real property identified as Suite H, 8017 Dorsey Run Road, Jessup, Maryland  20794, that is owned by ITPROP and at which the Debtor conducts its business.

Pre-Petition shall mean any event occurring before the Petition Date.

Pre-Petition Atlantic Union Indebtedness shall mean the amounts owed to Atlantic Union on the Petition Date.

Pre-Petition SBA Indebtedness shall mean the amounts owed to the SBA on the Petition Date.

Priority Claim shall mean any Allowed Claim of a person holding a Claim entitled to priority pursuant to Bankruptcy Code §507(a) other than an Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8).

Priority Tax Claim shall mean any Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8); provided, however, any Claims for penalties asserted by governmental units shall not be a Priority Tax Claim.

Professionals shall mean persons, including attorneys, accountants, the Trustee, and other professionals, retained or appointed in the Chapter 11 case or to be compensated pursuant to §§ 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code and order of the Bankruptcy Court.

Projections shall mean the Debtor's cash flow projections that are attached to the Disclosure Statement as **Appendix 1**, as may be modified and amended.

Sandy Spring shall mean Sandy Spring Bank.

Sandy Spring Collateral shall mean all of the Debtor's inventory, chattel paper, accounts, equipment and general intangibles; whether any of the foregoing is owned now or acquired later:

all accessions. additions. replacements, and substitutions relating to any of the foregoing: all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

Sandy Spring Guaranty shall mean the Guaranty Agreement executed by the Debtor in connection with the obligations due under the Sandy Spring Note.

Sandy Spring LOC shall mean the $75,000.00 line of credit extended to the Debtor by Sandy Spring Bank in accordance with a Business Loan Agreement that was executed by the Debtor.

Sandy Spring Note shall mean the Note executed on or about March 15, 2011, evidencing Sandy Spring's loan to ITPROP in the original principal amount of $356,500.00.

Sandy Spring Pledge shall mean the Business Loan Security Agreement executed by the Debtor by which it pledged its Sandy Spring Collateral as security for its obligations under the Sandy Spring Guaranty.

SBA shall mean the United States Small Business Administration.

SBA Collateral shall mean all assets of the Debtor including but not limited to, equipment, fixtures, inventory, accounts, instruments, chattel paper, general intangibles and furniture.

Secured Claim shall mean a secured Claim pursuant to § 506 of the Bankruptcy Code, and shall mean an Allowed Claim in an amount equal to the present value of the applicable Creditor's interest in the Debtor's interest in the Property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Bankruptcy Court.

Smith Duggan shall mean Smith Duggan Cornell & Gollub LLP

Unsecured Claim shall mean any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or a Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (ii) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the estate's interest in the Debtor's property securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (iii) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (iv) any Claim designated as an Unsecured Claim elsewhere in the Plan.

W&O shall mean Wolff & Orenstein, LLC, the Debtor's attorneys in this Case.

6

### 3.       Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply, irrespective whether the Bankruptcy Case is pending at the time such computation is made.

### 4.       Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), and except as otherwise provided herein or therein, the laws of the District of Maryland shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, without giving effect to the conflicts of law principles thereof.

### 5.       Exhibits

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein. To the extent any Exhibit is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

## ARTICLE II

## CLASSIFICATION, IMPAIRMENT, AND
## TREATMENT OF CLAIMS AND INTERESTS

### A.       CLASSIFICATION AND IMPAIRMENT OF CLAIMS AND INTERESTS

### 1.       Introduction

All Claims and Interests, except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

7

### 2. Classification and Impairment

The following Classes are established and are Impaired or Unimpaired, as indicated below:

| Class Number | Claims Description | Impairment |
|---|---|---|
| 1 | Secured Claim of Atlantic Union (ITPROP Loan) | Unimpaired |
| 2 | Secured Claim of Atlantic Union (Line of Credit | Unimpaired |
| 3 | Secured Claim of SBA (ITPROP Loan) | Unimpaired |
| 4 | Secured Claim of SBA | Unimpaired |
| 5 | Priority Wage Claims | Impaired |
| 6 | Unsecured Convenience Claims- Claims under $2,500.00 | Impaired |
| 7 | General Unsecured Claims | Impaired |
| 8. | Disputed Unsecured Claim of KPM | Impaired |
| 9. | Equity Interests | Unimpaired |

### B. TREATMENT OF CLAIMS AND INTERESTS

#### 1. Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, certain Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth immediately below.

##### a. Administrative Claims

Provided that an Administrative Claim has not been paid prior to the Effective Date, on, or as soon as reasonably practicable after the Effective Date that an Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which such Holder and the Debtor shall have agreed upon in writing. Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan. Except for Professional Fee Claims, any Person seeking

allowance or payment of an Administrative Claim shall serve and file a motion seeking allowance of such Claim not later than thirty (30) days following the Confirmation Date. The failure to file a motion seeking the allowance of any Administrative Claim by the thirtieth (30th) day following the Confirmation Date shall constitute a bar against the assertion or collection of any such Administrative Claim, and shall relieve the Debtor, and the Estate from any liability, responsibility, or obligation with respect to such Administrative Claim. Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Administrative Claim (other than Professional Fee Claims) that is not filed by the thirtieth (30th) day following the Confirmation Date. The Debtor shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed motion for the allowance or payment of any Administrative Claim (other than Professional Fee Claims).

### b.    Priority Tax Claims

The Debtor does not believe that any Priority Tax Claims exist in these Cases. To the extent that such claims are discovered to exist, provided that a Priority Tax Claim has not been paid prior to the Effective Date, on, or as soon as reasonably practicable after, the Distribution Date immediately following the date a Priority Tax Claim becomes an Allowed Priority Tax Claim, but in no event later than the date that is five (5) years after the Petition Date, a Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, (i) Cash in an amount equal to the aggregate principal amount of the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion of such Allowed Priority Tax Claim from the Effective Date through the date of payment at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which Confirmation occurs, or (ii) such other treatment as to which such Holder and the Debtor shall have agreed upon in writing; provided, however, that the Debtor shall have the right to prepay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty. Holders of Priority Tax Claims will be paid in full on account of such Claims and are not entitled to vote on this Plan.

### C.    Claims

### Class 1 – Secured Claim of Atlantic Union (ITPROP Loan)

Atlantic Union is the Holder of a first priority lien on substantially all of the Debtor's Assets. Atlantic Union's Secured Claim was perfected by Sandy Spring's filing of a UCC-1 Financing Statement with the Maryland State Department of Assessments and Taxation on March 28, 2011 as extended by the filing of Forms UCC-3.  The obligation evidenced by the First Sandy Spring Note that was executed by ITPROP.  The Debtor guaranteed the obligation of ITPROP and is obligated to Atlantic Union Bank for any payments not made by ITPROP. Atlantic Union has retained its liens on the Debtor's Assets through the Cash Collateral Order. Pursuant to the Cash Collateral Order, the allowed amount of Atlantic Union's Claim is $220,492.18.  In full and complete satisfaction of the Allowed Secured Claim of Atlantic Union,

9

ITPROP shall continue to make the payments required under the Loan Documents with the obligation remaining guaranteed by the Debtor.  The Holder of the Class 1 Allowed Secured Claim shall retain its lien securing the loan to the same extent and priority that existed on the Petition Date, as enhanced by the Cash Collateral Order, until such time as the Class 1 Allowed Secured Claim is paid in full.  Class 1 is Unimpaired and therefore the Holder of the Class 1 Claim is not entitled to vote to accept or reject the Plan.

### Class 2 – Secured Claim of Atlantic Union (Line of Credit)

Atlantic Union is the Holder of a second priority lien on substantially all of the Debtor's Assets. Atlantic Union's Secured Claim is perfected by the same UCC-1 Financing Statement with the Maryland State Department of Assessments and Taxation on March 28, 2011 as extended by the same Form UCC-3. The Debtor has been making regular monthly payments during the course of the Chapter 11 Case in accordance with the Cash Collateral Order and will continue to make those payments under the contract terms until the obligation is paid in full. The Holder of the Class 2 Allowed Secured Claim shall retain its lien securing the loan to the same extent and priority that existed on the Petition Date, as enhanced by the Cash Collateral Order, until such time as the Class 2 Allowed Secured Claim is paid in full.  Pursuant to the Cash Collateral Order, the allowed amount of Atlantic Union's Claim is $58,953.10.  Class 2 is Unimpaired and therefore the Holder of the Class 2 Claim is not entitled to vote to accept or reject the Plan.

### Class 3 – Secured Claim of the SBA (ITPROP Loan)

The SBA is the Holder of a third priority lien on substantially all of the Debtor's Assets. The SBA's Secured Claim was perfected by the SBA's filing of a UCC-1 Financing Statement with the Maryland State Department of Assessments and Taxation on June 9, 2011 as extended by the filing of Forms UCC-3.  The obligation evidenced by the SBA Note that was executed by ITPROP.  The Debtor guaranteed the obligation of ITPROP and is obligated to the SBA for any payments not made by ITPROP.  In full and complete satisfaction of the Allowed Secured Claim of the SBA, ITPROP shall continue to make the payments required under the SBA Loan Documents with the obligation remaining guaranteed by the Debtor.  The Holder of the Class 3 Allowed Secured Claim shall retain its lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 3 Allowed Secured Claim is paid in full. By its Proof of Claim No. 3, the SBA asserts that its Claim is $115,676.90.  Class 3 is Unimpaired and therefore the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan.

### Class 4 – Secured Claim of the SBA

The SBA is the Holder of a fourth priority lien on substantially all of the Debtor's Assets. The SBA's Secured Claim was perfected by the SBA's filing of a UCC-1 Financing Statement with the Maryland State Department of Assessments and Taxation on July 9, 2020.  The Debtor has been making regular monthly payments during the course of the Chapter 11 Case in accordance with the terms of the SBA Loan Documents and will continue to make those payments under the contract terms until the obligation is paid in full.  The Holder of the Class 4

Allowed Secured Claim shall retain its lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 4 Allowed Secured Claim is paid in full. By its Proof of Claim No. 1, the SBA asserts that its Claim is $172,134.78. Class 4 is Unimpaired and therefore the Holder of the Class 4 Claim is not entitled to vote to accept or reject the Plan.

### Class 5 - Priority Wage Claims

Class 5 consists of Allowed Unsecured Claims of the Debtor's employees in amounts up to, and including, $17,150.00 for wages that were earned, but not paid, in the 180 days immediately preceding the Petition Date. As reflected in the Debtor's Schedules, those Claims are as follows:

| CLAIMANT | CLAIM AMOUNT | PRIORITY AMOUNT |
|---|---|---|
| Aaron Coleman | $7,0809.00 | $7,080.00 |
| Cathy Wilt | $9,030.87 | $9,030.87 |
| David Bush | $10,707.50 | $10,707.50 |
| Lana Sapojnik | $1,898.20 | $1,898.20 |
| Lev Guttman | $100.00 | $100.00 |
| Linda Taylor | $6,992.34 | $6,992.34 |
| Morton Vaughn | $499.18 | $499.18 |
| Robert Wilt | $87,079.83 | $12,479.83 |

In full and complete satisfaction, discharge and release of the Class 5 Claims, the Debtor shall pay each Holder of a Class 5 Claim one hundred percent (100%) of its Allowed Class 5 Claim, in full, without interest, within ninety (90) days of the Effective Date. Class 5 is Impaired and therefore the Holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

### Class 6 – Unsecured Convenience Claims- Claims under $2,500.00

Class 6 consists of Allowed Unsecured Claims in amounts equal to or less than $2,500.00. As reflected in the Debtor's Schedules, those Claims are as follows:

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM |
|---|---|---|
| AFLAC | $1,152.42 | |
| Allied Waste Service | $662.00 | |
| Baltimore Gas & Electric | $1,463.00 | |
| Berkshire Life | $854.87 | |
| Cingular Wireless | $787.65 | |
| Comcast | $581.27 | |
| Hunt Manor Insurance | $2,240.57 | |
| Intelliworks HT | $962.00 | $10,498.55[1] |

---

[1]   Based upon the filed Proof of Claim, Intelliworks will not be included in Class 6 unless it reduces the amount of its claim to $2,500.00.

11

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM |
|---|---|---|
| McMaster Carr Supply | $1,073.10 | $1,073.10 |
| Mega Electronics | $174.20 | |
| MSC Industrial Supply | $70.76 | |
| Newark Electronics | $921.66 | |
| The Hartford Insurance Group | $2,240.47 | |
| UPS Corporate Legal Dept | $376.10 | |
| Vital Records Control | $178.20 | |

Each Holder of an Allowed General Unsecured Claim in an amount greater than $2,500.00, which would otherwise be an Allowed General Unsecured Claim in any other Class under the Plan, may voluntarily reduce its Claim to $2,500.00 and be treated as a Holder of an Allowed Unsecured Convenience Claim for purposes of this Plan. Such an election must be made on the Ballot and be received by the Debtor on or prior to the Voting Deadline. Any election after the Voting Deadline shall not be binding upon the Debtor unless the Voting Deadline is expressly waived, in writing, by the Debtor, provided, however, that under no circumstance may such waiver by the Debtor occur on or after the Effective Date. In full and complete satisfaction, discharge and release of the Class 6 Claims, the Debtor shall pay each Holder of a Class 6 Claim one hundred percent (100%) of its Allowed Claim, in full, without interest, within ninety (90) days of the Effective Date. Class 9 is Impaired and therefore the Holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

### Class 7 - General Unsecured Claims

Class 7 consists of the Allowed non-priority Unsecured Claims including any wage claims that exceed $17,500.00 or that were earned more than 180 days prior to the Petition Date. As reflected in the Debtor's Schedules, those Claims are as follows:

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM |
|---|---|---|
| Digi-Key Corporation | $3,983.77 | |
| Esco Products | $7,079.51 | |
| Gordon Feinblatt | $829,497.82 | $894,147.29 |
| GPD Optoelectronics | $3,080.00 | |
| HT Machine Shop, LLC | $101,042.75 | |
| ITPROP | $4,358.00 | |
| R/S Electronics, Inc. | $8,857.05 | |
| Smith Duggan | $99,000.00 | $101,498.30 |
| T&M Machine Shop | $8,214.00 | |
| Terrace Assembly | $12,626.10 | |
| Todd & Weld, LLP | $6,116.50 | |
| Wells Fargo | $51,609.67 | $52,971.42 |
| Robert Wilt[2] | $74,600.00 | |

---

[2]   This Claim represents the amount of Mr. Wilt's Wage Claim that is not a priority wage claim because it exceeds the allowed dollar amount and because a portion of the fees were

In full and complete satisfaction, discharge and release of the Class 7 Claims, the Debtor shall pay each Holder of a Class 7 Allowed Claim, on a pro rata basis, pari passu, with the Allowed Class 8 Claim, on a quarterly basis, without interest, commencing the quarter immediately following the quarter when Class 6 Claims have been paid in full.  Class 7 Claims will be paid from Disposable Income through and including the date that is five (5) years after the Effective Date.

### Class 8 - Disputed Unsecured Claim of KPM

Class 8 consists of the disputed Judgment Claim of KPM on account of the Judgment entered in the District Court.  See Claim #5 in the amount of $10,130,176.42.  The Debtor has appealed the judgment and that appeal remains pending.  Class 7 is treated as disputed until resolution of the appeal.  The Debtor scheduled KPM's Disputed Claim at $10,092,992.14 and KPM has filed a Proof of Claim 5 asserting a Claim of $10,130,176.42.  To the extent that the Appellate Proceedings result in KPM holding an Allowed Claim, in full and complete satisfaction, discharge and release of the Class 8 Claim, the Debtor shall pay the Holder of the Class 8 Allowed Claim pari passu with the Allowed Class 7 Claims, on a quarterly basis, without interest, commencing the quarter immediately following the quarter when Class 6 Claims have been paid in full.  The Class 8 Claim will be paid from Disposable Income through and including the date that is five (5) years after the Effective Date.

### Class 9 - Equity Interests

Class 9 consists of the Equity Interest in the Debtor.  Mr. Wilt, as the sole Holder of a Class 9 Interest, shall have his Interest reinstated under the Plan in exchange for the Cash Infusion, and shall receive all proceeds of the Cash Infusion after payment of all Post-Effective Date Expenses, U.S. Trustee fees, Administrative Expenses, Secured Claims, Priority Claims, and General Unsecured Claims. Class 9 Interests are impaired.

## ARTICLE II

## ACCEPTANCE OR REJECTION OF PLAN

### 1.      Impaired Classes of Claims Entitled to Vote

Subject to the applicable provisions of Article II of this Plan, the votes of Holders of Claims and Interests in Impaired Classes who will receive or retain property on account of their Claims or Interests and who are entitled to vote will be solicited for acceptance or rejection of this Plan.  Classes of Claims or Interests that have been designated in this Plan as unimpaired are not entitled to vote with respect to the Plan.

---

earned more than one hundred eighty days prior to the Petition Date.

**2.      Confirmation Pursuant to Bankruptcy Code Section 1129(b)**

To the extent that any impaired class of Claims does not accept this Plan, the Debtor hereby requests confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code.

**3.      Reservation of Rights Relating to Plan**

The Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan or any Exhibit or schedule, including the right to amend or modify this Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**4.      Elimination of Classes**

Any Class that does not contain any Allowed Claims or Interests, or any Claims or Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF PLAN

**1.      Vesting of Property**

On the Effective Date, all of the Debtor's Assets shall vest in the Debtor, subject to the Liens and other obligations expressly created or preserved by this Plan, but otherwise free and clear of all other liens, claims, interests and encumbrances.  All rights to manage the Debtor shall be vested in the Debtor, including any right to appeal the Confirmation Order.

**2.      Cash Infusion**

Within 14 days of the Effective Date, Mr. Wilt shall cause to be paid the first $5,000.00 of his Cash Infusion.  On the same date for each of the following four years, Mr. Wilt shall cause to be paid an additional $5,000.00 to the Bankruptcy Estate for a total of $25,000.00.

**3.      Exemption From Transfer And Recordation Taxes**

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale, conveyance and/or

14

transfer of any or all of the Collateral, and any deed of trust evidencing any loan obtained to purchase said property, shall not be subject to any stamp tax or other similar tax.

### 4.    Claims and Causes of Action

Except as expressly set forth in this subsection, all Causes of Action owned by the Debtor, including, without limitation, Avoidance Actions, shall be preserved.

### 5.    Preservation of Priority

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, all Claims, including, without limitation, Administrative Claims, shall retain their respective priority under the Bankruptcy Code and applicable non-bankruptcy law, unless expressly modified by the terms of this Plan.

### 6.    Governing Documents

Any By-Laws of the Debtor shall remain in place.

### 7.    Management

After the Confirmation Date, the Debtor will be managed by Mr. Wilt at the same compensation as he was receiving on the Petition Date.

## ARTICLE V

## DISTRIBUTIONS

### 1.    Bar Date

Any Claim in existence as of the Petition Date that is not scheduled by the Debtor, or that is scheduled as contingent, unliquidated, or disputed, or that varies in amount, nature, or priority from that stated in the Debtor's schedules (as may have been amended), must have been asserted, if at all, by the filing of a Proof of Claim with the Bankruptcy Court. Such Proof of Claim must have been filed with the Bankruptcy Court no later than the Claims Bar Date. The failure to file a Proof of Claim by the Claims Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtor and its estate from any liability, responsibility, or obligation with respect to such Claim. Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Claim that is not filed by the Claims Bar Date. The Debtor shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed proof of claim.

15

**2.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**A.      Delivery of Distributions in General.**

Distributions to each Holder of an Allowed Claim shall be made by the Debtor (a) at the addresses set forth on the Proofs of Claim filed by such Holder, (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim, (c) at the address reflected in the Schedules if no proof of Claim has been filed and the Debtor has not received a written notice of a change of address, (d) at the address set forth in the other records of the Debtor at the time of the Distribution, or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer. Distributions shall be made in accordance with the terms of this Plan. In making Distributions under this Plan, the Debtor may rely upon the accuracy of the claims register maintained in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court allowing or disallowing Claims in whole or in part.

**B.      Undeliverable and Unclaimed Distributions**

If the Distribution to any Holder of an Allowed Claim is made in accordance with this Plan and is returned to the Debtor as undeliverable or is otherwise unclaimed within sixty (60) days following such Distribution, such Distribution may be cancelled and the Debtor and the Estate shall be relieved of any and all obligations to make further Distributions to such Holder. Any Holder of an Allowed Claim that does not timely negotiate any payment made pursuant to this Plan shall be deemed to have forfeited its Claim and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor, the Debtor and its Estate, and their respective agents, attorneys, representatives, employees, or independent contractors, and/or any of their property. Nothing contained in this Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim; provided, however, that in its sole discretion, the Debtor may take such other action as the Debtor deems appropriate to locate the Holder of an Allowed Claim.

**3.      Means of Cash Payment**

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made, on and after the Effective Date, at the option and in the sole discretion of the Debtor by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor. In the case of foreign creditors, Cash payments may be made, at the option of the Debtor, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**4.      Interest on Claims**

Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of an Allowed Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### 5.        Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All Entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes. For example, with respect to any employee-related withholding, if the Debtor is obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax and other payroll obligations, the Debtor may withhold a portion of the Distributions allocated to the Holder of an Allowed Claim that is a present or former employee, whether or not such Distributions are in the form of Cash, in such amount as is determined necessary to satisfy such Holder's tax and other payroll obligations with respect to the Distributions. Notwithstanding the foregoing or any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Debtor for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Debtor in connection with such Distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Article V.2.B of this Plan.

### 6.        Setoffs

**By the Debtor**

Except as otherwise provided in this Plan, the Debtor may, pursuant to Bankruptcy Code sections 553, 558, or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan with respect to such Claim, Claims of any nature whatsoever that the Debtor may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

**By Non-Debtors**

Unless otherwise stipulated in writing by the Debtor, or asserted pursuant to a timely filed Proof of Claim or as expressly provided for by the terms of the agreement underlying any

17

timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Estate (an "Estate Claim") must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time it answers such Estate Claim, or such right of setoff, subrogation, or recoupment will be deemed waived and forever barred. Notwithstanding the foregoing, nothing herein shall affect the setoff rights of any taxing authority.

### 7.     Procedure for Treating and Resolving Disputed, Contingent, and/or Unliquidated Claims

### Objection Deadline; Prosecution of Objections

Except as set forth in this Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Bankruptcy Court. If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in the Chapter 11 Cases, or to such Entities as the Bankruptcy Court shall order. The filing by the Debtor of an adversary proceeding or other legal action against the Holder of any Claim shall constitute a dispute as to such Claim for the purposes of distributions under this Plan. The provisions of this Plan relating to the Claims Objection Deadline is intended solely to facilitate orderly distributions with respect to Claims. Notwithstanding anything to the contrary herein, the failure of the Debtor to file an objection to a Claim by the Claims Objection Deadline shall not constitute a determination of the validity of such Claim for purposes of res judicata, collateral estoppel, or any other similar doctrine, shall not constitute an admission by the Debtor with respect to any Claim, or otherwise constitute a bar against the Debtor pursuing any action at law or in equity against the Holder of a Claim, or raising any defense against the assertion of any Claim.

### 8.     No Distributions on Disputed Claims

Notwithstanding any other provision of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Debtor does not dispute at the time and in the manner that the Debtor makes Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan.

### 9.      Distributions on Allowed Claims

Payments and Distributions to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of this Plan that govern Distributions to such Holders.

### 10.      *De Minimis* Distributions

Except as otherwise expressly provided in this Plan, the Debtor shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim does not constitute a final Distribution to such Holder and such Distribution has a value less than $10.00.

### 11.      Fractional Dollars

Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

## ARTICLE VI

## CONTRACTS AND UNEXPIRED LEASES

### 1.      Copier Lease

The Debtor's lease with US Bank Equipment of an office copier shall be assumed upon entry of the Confirmation Order.

### 2.      Rejection

Any executory contracts on unexpired leases not specifically assumed will be deemed rejected upon entry of the Confirmation Order.

## ARTICLE VII

## CONFIRMATION AND CONSUMMATION OF THIS PLAN

### A.      Conditions to Confirmation

In addition to any other conditions as may be imposed by law, the following are conditions to confirmation of the Plan:

1.      A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125 shall have been entered by the Bankruptcy Court;

2.      A proposed Confirmation Order in form and substance, reasonably acceptable to the Debtor;

3.      Approval of all provisions, terms and conditions hereof in the Confirmation Order.

## B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article VII.C of the Plan:

1.      The Confirmation Order shall have been entered in the Debtor's Chapter 11 Case and shall provide that the Debtor is authorized to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

2.      The Confirmation Order shall have become an unstayed Final Order, except that the existence of an appeal absent a stay pending appeal shall not delay the Effective Date;

3.      All Exhibits shall be, in form and substance, reasonably acceptable to the Debtor, and shall have been executed and delivered by all parties' signatory thereto;

4.      The Debtor shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan; and

5.      All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

## C.    Waiver of Conditions

Each of the conditions set forth in Article VII of this Plan, except for entry of the Confirmation Order, as set forth in Article VII.B.1 of this Plan, may be waived in whole or in part by the Debtor. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

20

### D.        Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement or treatment of Claims provided for in this Plan be null and void. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions as may be approved by the Court either before or after the expiration of such 30-day period.

### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 1.        Professional Fee Claims

### A.        Final Fee Applications

Final Fee Applications shall be filed no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  To the extent Professional Fee Claims have been allowed prior to the Effective Date, such Claims shall be paid on the Effective Date (unless otherwise agreed in writing between the Debtor and the affected Professional).

### B.        Employment of Professionals after the Effective Date

On the Effective Date, the Debtor shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, realtors, brokers, auctioneers, expert witnesses, accountants, appraisers, consultants, and financial advisors, as needed to assist the Debtor in fulfilling its obligations under the Plan, and on whatever fee arrangement the Debtor deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements.  Professionals engaged by the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein.  If the Debtor has any objection to an application for compensation submitted to it by a Professional, the Debtor and the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter. Any Professional Fee Claims arising after the Effective Date shall be paid out of the proceeds of the Debtor's operations and be considered as an expense that is part of the determination of its Disposable Income.

21

**2.      Other Administrative Claims**

All other requests for payment of an Administrative Claim arising from and after the Petition Date up to and through the Effective Date, other than Professional Fee Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtor no later than the Administrative Claims Bar Date.  Unless the Debtor objects to an Administrative Claim, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtor objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim. All allowed Administrative Claims, other than Administrative Fee Claims, shall be paid in accordance with Article II.B.1 of this Plan.

## ARTICLE VIII

## EFFECT OF PLAN CONFIRMATION

**1.      Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns.

**2.      Discharge of the Debtor**

Pursuant to Bankruptcy Code section 1141(d)(1), and subject to the occurrence of the Effective Date, Confirmation will discharge all Claims against the Debtor except for the obligations and Liens expressly created or preserved by this Plan.

**3.      Indemnification Obligations**

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to their operating or organizing documents, contracts, instruments, agreements, certificates of incorporation, by-laws, comparable organizational documents, or any other documents, or applicable law, shall be rejected as of the Effective Date, to the extent executory.  Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification the Debtor, to the extent of available coverage.

**4.      Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.  On the Effective Date, the Discharge will go into effect.

## ARTICLE IX

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan, and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

2. Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

3. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4. Effectuate performance of and payments under the provisions of this Plan;

5. Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to the Chapter 11 Case, this Plan, or any Plan Document;

6. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

7. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

8.     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, Consummation, or enforcement of this Plan or the Confirmation Order;

10.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11.    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

13.    Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

14.    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

15.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

16.    Hear and determine any Causes of Action;

17.    Hear and determine all disputes involving the existence, nature, or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to this Plan;

18.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

19.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

20.    Enforce all orders previously entered by the Bankruptcy Court;

21.    Dismiss the Chapter 11 Case; and

22.    Enter a final decree closing the Chapter 11 Case.

24

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

### 1.      Modifications and Amendments

The Debtor may alter, amend, or modify this Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in Bankruptcy Code section 1101(2), the Debtor may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of this Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 2.      Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, then the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 3.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Entity.

### 4.      Payment of Statutory Fees

All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the

25

Effective Date shall be paid by the Debtor; said fees to be repaid to the Debtor. All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or after the Effective Date by the Debtor. The Debtor shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees.

## 5.　　Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plans. If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity, (ii) prejudice in any manner the rights of the Debtor, the Debtor or any other Entity, or (iii) constitute an admission of any sort by the Debtor or any other Entity.

## 6.　　Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, (v) facsimile transmission or (vi) e-mail, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or e-mail transmission, when actually received and telephonically confirmed by the recipient, and (d) addressed as follows:

The Debtor:

Jeffrey M. Orenstein, Esq.
Wolff & Orenstein, LLC
15245 Shady Grove Road
Sute 465
Rockville, Maryland 2850
Tel: 301-250-7232
Fax: 301-816-0592
jorenstein@wolawgroup.com
Counsel for the Debtor

26

### 7.    Plan Supplement(s)

Exhibits to this Plan not attached hereto shall be filed in one or more Plan Supplements. Any Plan Supplement (and amendments thereto) filed by the Debtor shall be deemed an integral part of this Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during normal business hours, by visiting the Bankruptcy Court's website at www.dcb.uscourts.gov  (PACER account required).  Holders of Claims and/or Interests may obtain a copy of any Plan Supplements upon reasonable written request to counsel for the Debtor.

### 8.    Exhibits

Any and all Exhibits, or other lists or schedules not filed with this Plan or accompanying Disclosure Statement shall be filed with the Clerk of the Bankruptcy Court.  Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtor in accordance with the contact information provided in Article X.6 of this Plan.

### 9.    Tax Reporting And Compliance

The Debtor is hereby authorized to request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

### 10.    Filing of Additional Documents

On or before substantial consummation of this Plan, the Debtor reserves the right to file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Respectfully submitted,

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#07512)
Wolff & Orenstein, LLC
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 250-7232
jorenstein@wolawgroup.com

Counsel for The Innovative Technologies
 Group & Co, LTD

27

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of April, 2026, a copy of the foregoing was served by electronic mail to:

Hugh M. Bernstein, Esq.
Office of the United States Trustee
101 W. Lombard Street
Suite 2625
Baltimore, Maryland 21202
hugh.m.bernstein@usdoj.gov

Michael D. Nord, Esq.
Gebhardt and Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
mnord@gebsmith.com

Michael Benjamin Brown
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
mbbrown@milesstockbridge.com

Addison Chappell, Esq.
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
achappell@milesstockbridge.com

and to all parties in interest that have requested service through the Court's CM/ECF service.


/s/ Jeffrey M. Orenstein
Jeffrey M. Orenstein

28